IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO TELEPHONE COMPANY, INC., | |
| *Plaintiff*, | Civil No. 11- |
| v. | |
| SAN JUAN CABLE LLC d/b/a ONELINK COMMUNICATIONS, | |
| *Defendant*. | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Puerto Rico Telephone Company, Inc. (PRTC) brings this action for damages against San Juan Cable LLC d/b/a OneLink Communications (OneLink). Plaintiff PRTC alleges on knowledge as to itself and its own acts, and on information and belief as to all other matters as follows:

## NATURE OF THE ACTION

*"[V]ery little (if any) predation is accomplished through pricing, while a good deal is achieved through litigation."* Robert H. Bork, The Antitrust Paradox 357 (1978).

1.      OneLink is one of three incumbent cable operators in Puerto Rico, each of which has long held the only local "franchise" to provide cable service to distinct, non-overlapping areas of the Island. This complaint is about OneLink's illegal actions to preserve its exclusive monopoly franchise and stave off competition – in particular, from PRTC.

2.      PRTC is the incumbent local exchange carrier in Puerto Rico. At the time it sought to enter the video market, PRTC was providing Puerto Rico consumers across the Island

with voice and broadband Internet access services.  Like other incumbent local exchange carriers in other regions of the United States who have been providing customers video alternatives based on Internet Protocol Television (IPTV) for some years (e.g., AT&T U-verse® and Verizon FIOS®), PRTC determined that it could provide its customers with video services using its broadband network. Accordingly, in February, 2008, PRTC filed an application with the Telecommunications Regulatory Board of Puerto Rico (Board) for a franchise that would permit it to provide this service in competition with OneLink and the other incumbents.

3.      Unlike more traditional cable television services, PRTC's proposed IPTV-based video service will be highly interactive and customizable. IPTV will permit PRTC to offer Puerto Rico consumers a rich and superior video experience including new interactive and integrated features and services and state-of-the-art systems for detection and analysis of network problems.

4.      Perceiving a clear threat to its monopoly status, OneLink embarked on a course of conduct designed to thwart, or at a minimum delay, PRTC's entry into OneLink's markets. This relentless pattern of conduct included the issuance of false press releases regarding PRTC, the hijacking of Board proceedings, numerous unsuccessful motions to disqualify one of the commissioners, and the filing and vigorous prosecution of multiple objectively baseless lawsuits in both state and federal court – every one of which was resolved against OneLink. This onslaught of lawsuits, complaints and objections was not brought to protect any legitimate interest or right of OneLink.  Court after court found that the grant of PRTC's franchise would not in anyway harm OneLink or interfere with its cable franchise.  Rather, OneLink sought to use the litigation process itself to impede PRTC's entry into IPTV and protect OneLink's markets from competition.

5.     Defendant's predatory actions over the course of almost four years have had the purpose and effect of usurping the franchising process and directly interfering with PRTC's rights under established law.  On-again off-again stays and repeated scheduling and rescheduling of public hearings caused by OneLink's baseless litigation delayed the Board's resolution and grant of PRTC's pending franchise far beyond the statutorily contemplated 180 days, depriving PRTC access to the video services marketplace and raising PRTC's costs.

6.     These extraordinary lengths to which OneLink has gone to protect its monopolies is perhaps the best indication of the value of these monopolies to OneLink.  By forestalling PRTC's entry into the video services marketplace, OneLink has acquired and maintained these monopolies to the detriment of consumers and PRTC.

## JURISDICTION AND VENUE

7.     The Court has subject matter jurisdiction over the claims in this action pursuant to Section 3 of the Sherman Act, 15 U.S.C. § 3, and Section 4 of the Clayton Act, 15 U.S.C. § 15. This action is for damages for violations of Sections 2 and 3 of the Sherman Act, 15 U.S.C. §§ 2 and 3.

8.     The Court has supplemental jurisdiction over the claims in this case pursuant to the Puerto Rico Anti-Monopoly Act, 10 P.R. Laws Ann. §§ 257-276.

9.     Venue is proper in this judicial district pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391 because Defendant OneLink does business within this district and a substantial part of the events or omissions giving rise to the claim occurred within this district.

## THE PARTIES

10.     Plaintiff PRTC is a Puerto Rico corporation, having its principal place of business at 1515 FD Roosevelt Ave., Guaynabo, Puerto Rico. PRTC is the incumbent local exchange

carrier in Puerto Rico. PRTC is in the business of providing voice, high speed Internet broadband access, mobile and video (via satellite) services to its customers.

11.     Defendant OneLink is a Puerto Rico corporation, having a principal place of business at Urbanización Industrial Tres Monjitas, 1 Manuel Camuñas, San Juan, Puerto Rico. OneLink is in the business of providing land-based video services, high speed Internet access and voice (via VoIP) communications services to its customers in certain geographic markets in Puerto Rico. OneLink is the exclusive cable TV franchise holder in Levittown, Toa Alta, Toa Baja, Cataño, and San Juan, Puerto Rico.

## NATURE OF TRADE AND COMMERCE

12.     Consumers receive video services in two ways – via a land-based network, or via satellite. Satellite-based video services offer consumers programming via a satellite dish the consumer attaches to the home which receives signals from the provider's geostationary satellites. To receive this service, customers must have an unobstructed line of sight with the satellite.  Land-based video services are delivered via a hard-wired network.

13.     While satellite-based services have evolved considerably over the years, land-based video services continue to be the dominant choice of consumers in the United States. Moreover, there is a significant group of consumers that cannot use satellite-based video services because they lack a clear view of the sky or are impeded from mounting the required external satellite dish.  For such consumers in Puerto Rico, land-based video is the only option. OneLink has more such customers – i.e., customers for which satellite-based video is not an option – than any of the other cable providers in Puerto Rico.

14.     Because the video signal is carried over the airwaves from the provider's geostationary satellites to the receiving dish, satellite-based video services cannot offer

consumers the interactive and 2-way capabilities of a land-based system.  This is due to the fact that a satellite-system cannot receive up-stream commands (i.e., signals from the consumer's home to the orbiting satellites) from a consumer. Because of this, satellite-based service customers desiring true inter-active (sometimes referred to as "premium") video services such as those that can be offered by land-based providers must also purchase a separate broadband Internet access service.  (The Puerto Rico satellite-providers do offer the ability to order movies and events on demand via a call from the subscriber to the satellite-based provider.) The current broadband penetration in Puerto Rico is approximately 30 percent. The video services penetration is slightly above 50 percent.  Hence there is a significant segment of customers for video services in Puerto Rico who either do not desire or cannot afford to purchase separate broadband Internet access service.  For this significant segment of customers, land-based service from the cable companies is the only option for premium video services.

15.    Another advantage land-based video enjoys over its satellite competitors is that consumers often desire to purchase integrated bundles of service that include a combination of voice, high-speed Internet access and video services. Currently, only the franchised cable TV companies can provide such integrated bundles delivered over a single network in Puerto Rico. Because PRTC can only provide video via satellite prior to approval of its cable television franchise, PRTC, like the other satellite-based providers, is unable to offer a truly integrated service bundle, or "double-play" or "triple-play" as they are sometimes called.

16.    There are three providers of satellite-based services in Puerto Rico – DirecTV, Dish Network (via relationships with Puerto Rico-based distributors) and PRTC.  PRTC provides a satellite-based video service via a satellite system on which it has leased space.  Despite having offered its satellite-based video service for two years, PRTC has achieved only a low single-digit

share of the total video services market across Puerto Rico.

17.     While Dish Network and DirecTV have managed to acquire a customer base for their video offerings, the great majority of their customers are located in geographic areas not served by the land-based cable companies – OneLink in particular.

18.     The three current providers of land-based video services in Puerto Rico – OneLink, Liberty and Choice – each provide cable TV service in their respective franchised territories.  Currently, there is only one provider of land-based video in any geographic territory in Puerto Rico.

**RELEVANT PRODUCT MARKETS**

19.     This case involves four separate but interrelated relevant product markets for which there are unique groups of consumers and in which OneLink provides service: (a) the market for video services (i.e., land-based and satellite-based), (b) the market for land-based video service for consumers unable to secure video service from a satellite-based service provider; (c) the market for stand-alone two-way interactive (or "premium") video services for customers seeking premium video service but who do not desire to or cannot purchase high speed Internet access service; and (d) the market for integrated bundles of voice, Internet access and video service.

**RELEVANT GEOGRAPHIC MARKETS**

20.     Relevant geographic markets for the sale of video services, interactive "premium" video services and bundled voice, Internet and video services consist of separate geographic regions in Puerto Rico where land-based cable television operators have been granted exclusive franchise territories to deploy their networks and have opted to deploy their networks.  Land-based providers in other franchise areas cannot offer service and thereby compete in another

incumbent cable operator's territory.  Moreover, because a land-based provider cannot provide service where it has not deployed a network despite its authorization to do so, the relevant geographic market is limited to those areas where the land-based provider has deployed its network and thereby competes with other video providers. For example, while OneLink holds a franchise license for San Juan, which includes Old San Juan, it has opted not to deploy a network in Old San Juan. Thus the relevant geographic market would exclude Old San Juan and similar unserved areas.

21.    There also are significant barriers to entry into the relevant markets in this case. For example, in order to provide land-based video services, interactive video services, or bundled voice, Internet access and video services, a competitor must have access to a network capable of carrying data at a high rate between its facilities and the homes of individual consumers.  The two deployed networks used today to provide this access to residential customers are the networks owned by cable companies and telephone companies.  The sunk capital and fixed costs necessary to compete in these markets is extraordinary. Any new competitor in the relevant market would need to over-build a new cable infrastructure into areas of Puerto Rico where there are existing cable systems and wireline networks. Any such effort would be time-consuming and prohibitively expensive, even if the new entrant could obtain the requisite zoning and right-of-ways. No such "cable over-builders" have attempted to enter any geographic area in Puerto Rico.

## ONELINK'S MARKET POWER

22.    OneLink currently holds the exclusive cable franchise for the geographic areas of Levittown, Toa Alta, Toa Baja, Cataño and San Juan.  While some consumers in these areas purchase satellite-based video service, OneLink has a market share in the total video services market (which includes satellite-based video) of over 80 percent.  This is based on OneLink's

own information.  In a recent report OneLink indicated that it has 150,000 video customers and that its network currently passes 350,000 homes. ("Homes passed" is how carriers refer to homes that are within reach of their deployed network.) The take-rate for video services in OneLink's geographic regions is similar to that for Puerto Rico as a whole – i.e., 50 percent.  ("Take rate" refers to the percentage of customers where video service is available who actually purchase video service.) If one multiplies the take rate by the number of homes passed – i.e., homes where video service is actually available – one can estimate the total number of consumers in that geographic area actually purchasing video service from one of the available providers. Since OneLink passes 350,000 homes, that means there are approximately 175,000 consumers in OneLink's territory that purchase video service from some provider.  OneLink indicates it has 150,000 of those 175,000 video customers – i.e., 85 percent of the consumers in OneLink's territory that purchase video services, purchase them from OneLink.  Even assuming a disproportionately higher take rate of 60 percent in OneLink's geographic region, OneLink's market share still exceeds 70 percent.

23.     In addition there are other relevant product markets where OneLink's market share is 100 percent.  With regard to customers for whom satellite-based service is not an option (i.e., they cannot gain an unobstructed view of the sky, or are somehow impeded in erecting the requisite satellite dish), there is no cross-elasticity between satellite and cable rendering OneLink the sole option – i.e., 100 percent market share.  The size of this customer segment is significantly larger in OneLink's region than in the regions of the other cable franchise holders.

24.     Likewise, for customers desiring to purchase interactive or premium video services, but who do not desire or cannot afford to also purchase high speed Internet access, there is again a lack of cross-elasticity between satellite and cable and once again OneLink is the only

choice – again, a 100 percent market share.

25.     Finally, OneLink offers customers integrated bundles of voice, data and video services.  No other provider in OneLink's geographic market can provide integrated bundles over the same network that include voice, data and video service.

26.      OneLink's market power is also apparent in its offerings and prices.  Unlike the other cable providers, whose regions are more vulnerable to satellite-based competitors (i.e., fewer obstructions), OneLink is the only cable provider in Puerto Rico that does not offer its customers a low priced "broadcast" tier consisting of local network programming.  Consumers desiring this basic cable service in OneLink's territory must purchase OneLink's higher-priced first tier bundle of programming.

27.     OneLink's prices for its other various tiers are also higher than any of the satellite providers with whom it currently competes and any of the other cable providers in Puerto Rico. OneLink's prices have increased significantly in recent years compared with the general rate of inflation.  On July 1, 2011, OneLink increased its price for video services an additional $2.50 per month. The increase in OneLink's rates have far outstripped any increase in its costs.  OneLink's illegal conduct has allowed it to set prices well above its costs and protect against any entry by PRTC that would erode its artificially high, noncompetitive prices and profits.  Although the rise in OneLink's prices has created greater potential demand for competing video services such as the innovative kinds of services that PRTC seeks to provide, OneLink's demonstrated success at excluding PRTC has kept prices artificially high and reduced the output of services to Puerto Rico consumers.

28.     PRTC and OneLink function in and as part of interstate commerce, making extensive use of the instrumentalities of interstate commerce and substantially affect interstate

commerce.  OneLink transmits video programming from sources across the country and around the world in a continuous and uninterrupted flow of interstate commerce. OneLink's exclusionary conduct aimed at preventing PRTC from entering its markets had a substantial effect on interstate commerce.

## FACTUAL BACKGROUND

29.     In February 2008, PRTC sought to compete with OneLink in the above referenced markets and filed an application with the Board for a cable franchise to provide IPTV service to the citizens of Puerto Rico via its deployed broadband network.  While the relevant law requires a ruling in 180 days and historically the Board has ruled on similar matters relatively quickly (including franchise renewals and requests to operate a telephone system), in the present case it has taken the Board almost 4 years to grant PRTC's franchise.  And it appears that process is still not complete.

30.     PRTC's inability to compete is a direct result of the unlawful and anticompetitive conduct of OneLink.  This conduct was not part of any legal effort to advise a government body of its position or influence any governmental decision-making process. In fact that very government body – the Board – advised OneLink directly and early on that (a) OneLink had no particular expertise that would assist it in the current stage of the application process and (b) OneLink has ample legal avenues available to it to share its input and concerns.  Moreover, and as noted by a number of the Puerto Rican and federal courts that denied or dismissed OneLink's various claims, Board action granting (or denying) a franchise application will have no impact on OneLink or its interest in its franchise. For example, OneLink opposed PRTC's initial application because PRTC allegedly failed to provide sufficient information regarding public safety and just compensation to property owners, its qualifications to operate a cable system, its

plans and procedures for providing service in a non-discriminatory fashion and resolving billing disputes and whether PRTC had reserved sufficient channels to meet certain public interest access obligations.

31.     OneLink has sought to use its lawyers and the process itself to impose cost and delay on a potential new entrant into its market, interfere with PRTC's rights, and cut off PRTC's access to the Board.  OneLink's illegal conduct resulted in harm to PRTC by denying it the ability to offer IPTV, as well as harm to competition and Puerto Rico's consumers who were denied the benefits of a competitive marketplace.

32.     OneLink achieved this imposition of cost and delay not through the legal processes provided by Puerto Rico law – whereby any person may submit comments as well as raise concerns regarding a cable franchise application.  Rather, OneLink rejected the legal avenues available to it and pursued a course calculated to utilize the process itself to impose the greatest costs and maximum delay on PRTC's entry into the video services marketplace.  In other words, and despite the objectively baseless nature of OneLink's claims, it is not *that* OneLink was opposed to PRTC's application being granted, but rather *how* OneLink went about opposing it.

33.     OneLink used the federal and state courts as well as filings with and appearances at the Board to usurp the process and interfere directly with PRTC's rights. This conduct delayed the Board's resolution of the franchise application, resulting in harm to competition and harm to PRTC.

34.     OneLink did in fact have multiple motives for preventing PRTC's entry. First, OneLink holds the currently exclusive cable franchise in the geographic area where PRTC intends to first offer IPTV service. Competition would prevent OneLink from keeping prices

high and service quality low.   Second, OneLink has been for sale. A franchise facing no or marginal competition is inherently more valuable than one facing true competition. Finally, OneLink has been using this time to fortify against potential entry by PRTC, upgrading its old network infrastructure and signing customers to term contracts with automatic roll-over provisions and penalties for early termination.   In the event its efforts to thwart entry proved unsuccessful, OneLink has sought to protect its monopoly by limiting PRTC's viability as an effective competitor for customers in the relevant markets.

### CHRONOLOGY OF ONELINK'S UNLAWFUL PATTERN OF CONDUCT

35.   In February, 2008, PRTC, through its affiliate Coqui.net, filed its first application for a cable franchise.  The Board immediately set the application for a public hearing.  OneLink appeared at the hearing and over the objection of PRTC and the Board, literally hijacked the proceeding.  OneLink succeeded in defeating this initial franchise application.

36.   On December 11, 2008, PRTC re-filed its application.  PRTC also requested the Board grant it special temporary authority (STA) so that PRTC could enable its broadband system for video and beta test its ability to receive orders, deliver a video signal and bill using non-commercial employee "customers" during the pendency of the application process.  The Board granted PRTC's request for the STA.

37.   On January 13, 2009, OneLink filed a motion to intervene in this second application proceeding with the Board and a challenge to the Board's confidential designation of certain of PRTC's strategic business plans, price tables and financial statements filed as part of the application. As a result of these motions, on January 21, 2009 the Board rescheduled the previously noticed February 11 through 13 public hearing dates to March 4, 5 and 6. On February 11, 2009, OneLink presented a motion requesting the suspension of these revised

hearing dates because the Board had not ruled on its request for intervention.

38.     On February 10, 2009, OneLink filed a petition for a temporary restraining order and permanent injunction in federal district court (Docket No. 3:09-cv-01119-GAG), seeking to enjoin the Board's grant of the STA. The court found in the context of a request for injunctive relief that OneLink had a sufficient likelihood of success on the merits with regard to its argument that the STA was contrary to the Cable Act to hold a hearing. To avoid the cost and delay of litigating the issue, PRTC withdrew its request for the STA and the court dismissed the action as moot.  Subsequently, however, on March 25, 2009, OneLink asked the court to reopen its mootness determination based on allegations that PRTC was engaged in construction activities, such as wiring previously deployed terminals and clearing debris from the rights of way around terminals. OneLink claimed that these activities were an improper "continuation" of the STA. The district court heard argument and testimony of the matter but declined to reopen its earlier judgment.  The court noted that OneLink was free to file a new complaint.

39.     On April 2, 2009, OneLink filed its new federal complaint (Docket No. 3:09-cv-01322-GAG), based on essentially the same allegations – i.e., that PRTC was engaged in unlawful construction of a video network in violation of the Cable Act and certain FCC Orders. This time the federal district court dismissed OneLink's claims. *San Juan Cable LLC v. P.R. Tel. Co.*, 623 F.Supp.2d 189 (D.P.R. 2009).  The United States Court of Appeals for the First Circuit affirmed the dismissal.  612 F.3d 25 (1st Cir. 2010).  In its July 2010 opinion, the circuit court observed that "OneLink has opened a second front on its war against its would-be rival; it sued in federal district court…." Finding that "OneLink's assertion of standing runs headlong into circuit precedent," and that there was "no allegation that PRTC's actions have in any way interfered with OneLink's use of its own cable system," the circuit court concluded – "[w]e can

think of no reason why Congress would have wanted to afford incumbent cable operators the ability to thwart potential competition from new market entrants by pursuing private rights of action." Thus, the court held "without serious question" that OneLink could not sue a "would-be rival" under the Cable Act, and that the court would not overrule clearly established precedent to allow OneLink to sue to enforce FCC orders.

40.     At the same time all of this was going on, on February 25, 2009 OneLink filed a submission requesting that the Board dismiss PRTC's pending franchise request alleging failures in form and substance. The Board did not appear to rule on this, because OneLink continued its pattern of baseless litigation and endless appeals.  Also on February 25, 2009, OneLink filed a writ of mandamus with the Puerto Rico Court of First Instance requesting the court order the Board to rule on OneLink's motion to intervene and with regard to the Board's confidential designation of certain PRTC documents.

41.     One week later, on March 2, 2009, the Board denied OneLink's request to intervene as well as its motion to reconsider the confidentiality designation.  The next day, on March 3, 2009, OneLink appealed the Board's decision denying its motion to intervene to the Puerto Rico Court of Appeals.  OneLink requested that the Court of Appeals stay the application process pending the appeal – which the court did.

42.     Three weeks later, on March 31, 2009, the Court of Appeals denied OneLink's motion to intervene, noting not only that OneLink had legal avenues available to it to intervene at subsequent stages of the process, but that "the Board [already] granted ample opportunity for OneLink to participate in the procedure." The Court underscored this point in denying OneLink's motions for reconsideration – " if [OneLink has]… reservations regarding the capacity or qualifications of PRTC to possess the franchise being solicited, the Board has given them the

opportunity to present them."

43.    On April 7, 2009, OneLink filed a motion for order to show cause, again citing PRTC's upgrade to its broadband system as an illegal build-out.

44.    After the appellate court's denial of OneLink's intervener status and the lifting of the stay, the Board scheduled a hearing date to complete this phase of the application process. But one month later, on April 24, 2009, OneLink filed a request for reconsideration of the denial. While the motion was rejected, the time for the hearing had passed and once again the Board set another hearing date – only to cancel it as well when OneLink appealed the denial of its intervention request to the Puerto Rico Supreme Court.  At OneLink's request, the Court re-imposed the stay.

45.    On June 15, 2009, with its appeal pending at the Puerto Rico Supreme Court, OneLink next filed a request for a temporary restraining order against the Board and PRTC, again focusing on PRTC's upgrade to its broadband system.  The court dismissed OneLink's request for failure to demonstrate any requisite harm to OneLink, as well as failure to exhaust administrative remedies with the Board.  OneLink appealed.

46.    On November 4, 2009, OneLink filed a petition for mandamus with the Court of First Instance asking the court to enjoin the application process, and order the Board to promulgate industry-wide regulations on cross-subsidy prior to evaluating PRTC's application. The court dismissed OneLink's action and was upheld on appeal.

47.    Also in November 2009, OneLink filed a complaint against PRTC with the Puerto Rico Department of Justice (PRDOJ) alleging "unfair methods of competition."   With the agreement of the PRDOJ, PRTC produced no materials and the matter appears concluded.

48.    On January 28, 2010, the Puerto Rico Court of Appeals upheld the lower court's

rejection of OneLink's TRO request relating to PRTC's network upgrade, observing that OneLink failed to demonstrate that it would suffer any real and palpable harm.

49.     Finally, on June 9, 2010, almost a year and a half after the lower court implemented the first stay of the application proceeding, the Puerto Rico Supreme Court upheld the lower court's denial of OneLink's request to intervene.  In doing so, the Court observed that the franchising process supports the public policy on telecommunications in Puerto Rico which is "protecting consumers and promoting competition.  The idea is to eliminate the monopoly that originally existed in the cable TV business, in a way that a citizen can have more and better offers of service at reasonable cost."  The Court went on to observe that the "only thing that the grant of the franchise to PRTC provokes is meeting [this] public policy established in our telecommunications laws."  Because "the act of granting a cable TV franchise to PRTC does not make OneLink lose its own [franchise]," permitting OneLink to intervene prior to the grant of the franchise "not only would delay the procedure of granting the franchise, but would distort the [pro-consumer] public policy of [the] telecommunications [laws] and LPAU."

50.     OneLink twice sought reconsideration of this order from the Supreme Court and was twice denied before the matter was eventually sent down to the Court of Appeals. The stay on PRTC's franchise application was lifted again on October 26, 2010.

51.     Two weeks after the first rejection of OneLink's claimed right to intervene by the Puerto Rico Supreme Court, on June 30, 2010, the Puerto Rico Court of Appeals upheld the lower court's dismissal of OneLink's request that the Board be required to promulgate rules on cross-subsidy prior to proceeding with the application process – observing that the legislature specifically gave the Board the discretionary power to issue regulations it deems necessary.

52.     After almost four years, OneLink has not succeeded on one of the multitude of

objectively baseless claims in which the only conceivable harm to OneLink was the entry of a new competitor. Through this pattern of litigation, however, OneLink did succeed in achieving the very result the First Circuit and Puerto Rico Supreme Court cautioned against – usurping the process and thwarting competition from a new market entrant. And OneLink's actions did not end here.

53.     In something of a déjà vu experience, and after the numerous courts up to and including the Supreme Court had ruled that OneLink had no right to intervene in the current stage of the application process, OneLink appeared at a Board hearing in August 2011 and still attempted to intervene. OneLink usurped the public interest hearing, attempting to offer witnesses and ask questions of other commenters. When called by the Board on its improper attempts to intervene, counsel for OneLink stood up in the hearing room and proclaimed "I am the public."

54.     Finally, on October 27, 2011, Choice, another cable franchise holder, picked up the baton and filed for an injunction with the Board based on the now familiar allegation that PRTC's upgrade to its broadband system amounted to a construction of a cable system without a franchise. This action, but for a different geographic region, was identical to the one filed by OneLink and subsequently dismissed by both the trial and appellate courts for, among other reasons, OneLink's failure to allege any harm to OneLink. The alleged harm upon which Choice bases its request for a temporary restraining order is identical to that of OneLink's – entry of a new competitor.

55.     Choice is represented in this action by the same law firm that represented OneLink in its quest to delay and inhibit PRTC's entry, including its failed attempt to press the claim of illegal build-out. The apparent trigger of this latest action was PRTC's commencement

of its upgrade to its existing broadband network in Choice's exclusive franchise territory.

56.     Simultaneous to Choice's filing, OneLink issued a press release in which it made false statements regarding PRTC and lauded Choice's filing of the action.

### INJURY TO COMPETITION AND ANTITRUST INJURY TO PRTC

57.     As a direct result of the above conduct by OneLink competition in the markets for video services in Puerto Rico has been harmed. By foreclosing the entry of a new land-based rival, OneLink has, at the expense of consumers, prevented competition on price, features, programming packages, and quality of service and retained the unilateral ability to control output and raise prices.  OneLink's illegal maintenance of its monopoly position has caused injury to competition by (1) permitting it to raise prices to consumers well in excess of competitive levels without inducing customers to turn elsewhere, and (2) reducing the output and quality of video programming and other new and innovative services.

58.     Specifically, Puerto Rico's consumers in OneLink's markets have been forced to pay excessive prices for video services, as the increase of OneLink's prices for services have significantly outpaced the rate of inflation and OneLink's own costs. The exclusion of PRTC as a competitor for the past several years has eliminated a higher-quality lower-cost alternative for Puerto Rico consumers with the ability to discipline OneLink's monopoly pricing.  PRTC has been thwarted from offering consumers a better value on video and bundled services.

59.     OneLink's successful destruction of competition to date has forced Puerto Rico's consumers to accept lower quality and quantity of service. Consumers have been denied access to programming packages with more diverse and better options, as well as a wide array of new and innovative services available to consumers in other markets served by IPTV.  This reduction of output has prevented Puerto Rico consumers from enjoying the well-established benefits of

IPTV convergence. These benefits include, among other things, more programming channels in high definition (HD) format, more packages of voice, data and video (e.g., varying packages of channel line-ups and Internet speeds at varying prices), delivery of service to a myriad of video-capable devices in consumers' homes (e.g., IP set top boxes on TVs, personal computers, tablet computers and smartphones) and bill-paying conveniences. The benefit of revolutionary technological features have also been kept from Puerto Rico's consumers, including remote access to content and digital video recorders through wireless devices, innovative video on demand (e.g., browsing on-line programming catalogs to watch movie trailers and then select recordings to view), customized content on the television screen (e.g., updated, real-time stock, sports, traffic and weather information), picture-in-picture functionality (e.g., "channel surfing" without leaving the current program, and access to multiple camera angles or player statistics during sporting events) and state-of-the-art systems for detection and analysis of network problems.  For too long OneLink's illegal conduct has reduced and prevented the sale to Puerto Rico consumers of the exactly the kind of innovative services that competition produces.

60.    This same anticompetitive conduct that harmed competition in the relevant markets also caused direct and significant harm to PRTC.  As a result of OneLink's actions, PRTC has been foreclosed from entering the market for land-based video service with its superior products and lower-cost alternatives. PRTC has the ability to enter this market as a significant competitor and has demonstrated its clear intent and preparedness to do so.  As a result of OneLink's actions PRTC has been damaged in its business and property. PRTC has lost revenues associated with the provision of a retail land-based video service. PRTC has lost revenues associated with the ability to offer consumers bundles of services (e.g., double and triple play) and premium interactive services. PRTC has been unable to make any sales or profits

from IPTV. It has been unable to take any sales or market share away OneLink in any relevant market not because of OneLink's superior business acumen or marketing skill, but because of OneLink's willingness and ability to abuse the process and litigate baseless claims. Rather than compete on the merits, OneLink has delayed PRTC's entry raised PRTC's costs through years of litigation and action before the Board, simultaneously preserving its monopoly and raising its own prices to consumers without drawing increased output from PRTC.

## COUNT 1

### Monopolization by OneLink in Violation of Section 2 of the Sherman Act

61.     PRTC incorporates all of the above allegations as if fully set forth herein.

62.     The relevant product markets include video services, land-based video services, two-way interactive video services and bundles including video services. The relevant geographic markets are those geographic regions where OneLink holds a cable TV franchise and the geographic areas within those franchise territories where OneLink has deployed its network.

63.     OneLink has monopoly power in the above identified markets and has engaged in impermissible predatory and exclusionary conduct with the purpose and effect of maintaining and enhancing that power.

64.     As a result of OneLink's willful acquisition or maintenance of monopoly power, OneLink has harmed consumers and competition in the relevant product and geographic markets in the form of higher prices and lower quality services.

65.     OneLink's willful acquisition or maintenance of monopoly power was not the result of a superior product, business acumen or historical accident.

66.     There is no legitimate procompetitive justification for the anticompetitive actions and conduct which facilitated OneLink's monopolization of the relevant markets.

67.     Because PRTC's injury flows from the same conduct that resulted in the injury to competition and consumers, the injury to PRTC constitutes antitrust injury.

68.     OneLink's willful acquisition or maintenance of monopoly power in the relevant markets and its exclusionary, anticompetitive conduct as alleged violate Section 2 of the Sherman Act, 15 U.S.C. § 2.

69.     PRTC has been injured in its business or property by OneLink's monopolization of the relevant markets as alleged.

## COUNT 2

### Attempted Monopolization by OneLink in Violation of Section 2 of the Sherman Act

70.     PRTC incorporates all of the above allegations as if fully set forth herein.

71.     OneLink has engaged in exclusionary conduct with the specific intent to monopolize the above referenced product and geographic markets. Through its conduct, OneLink has demonstrated a specific intent to raise entry barriers and exclude competition from these relevant markets.

72.     Given the high entry barriers, physical and technical limitations of satellite-based video service, OneLink's significant market power and OneLink's success in excluding PRTC from the market for almost four years, there is a dangerous probability that OneLink will monopolize the relevant markets.

73.     As a result of said conduct, OneLink has harmed consumers and competition in the relevant product and geographic markets in the form of higher prices, lower quantity and lower quality of services.

74.     Because PRTC's injury flows from the same conduct that resulted in the injury to competition, the injury to PRTC constitutes antitrust injury.

75.     OneLink's exclusionary conduct with the specific intent to monopolize as alleged violates Section 2 of the Sherman Act, 15 U.S.C. § 2.

76.     PRTC has been injured in its business or property by OneLink's attempt to monopolize the relevant markets as alleged.

## COUNT 3

### Monopolization by OneLink in Violation of Puerto Rico Anti-Monopoly Act

77.     PRTC incorporates all of the above allegations as if fully set forth herein.

78.     The relevant product markets include video services, land-based video services, two-way interactive video services and bundles including video services. The relevant geographic markets are those geographic regions where OneLink holds a cable TV franchise and the geographic areas within those franchise territories where OneLink has deployed its network.

79.     OneLink has monopoly power in the above identified markets and has engaged in impermissible predatory and exclusionary conduct with the purpose and effect of maintaining and enhancing that power.

80.     As a result of OneLink's willful acquisition or maintenance of monopoly power, OneLink has harmed consumers and competition in the relevant product and geographic markets in the form of higher prices and lower quality services.

81.     OneLink's willful acquisition or maintenance of monopoly power was not the result of a superior product, business acumen or historical accident.

82.     There is no legitimate procompetitive justification for the anticompetitive actions and conduct which facilitated OneLink's monopolization of the relevant markets.

83.     Because PRTC's injury flows from the same conduct that resulted in the injury to competition, the injury to PRTC constitutes antitrust injury.

84.     OneLink's willful acquisition or maintenance of monopoly power in the relevant markets and its exclusionary, anticompetitive conduct as alleged violate the Puerto Rico Anti-Monopoly Act, 10 P.R. Laws Ann. § 260.

85.     PRTC has been injured in its business or property by OneLink's monopolization of the relevant markets as alleged.

**COUNT 4**

**Attempted Monopolization by OneLink in Violation of Puerto Rico Anti-Monopoly Act**

86.     PRTC incorporates all of the above allegations as if fully set forth herein.

87.     OneLink has engaged in exclusionary conduct with the specific intent to monopolize the above referenced product and geographic markets.  Through its conduct, OneLink has demonstrated a specific intent to raise entry barriers and exclude competition from these relevant markets.

88.     Given the high entry barriers, physical and technical limitations of satellite-based video service, OneLink's significant market power, and OneLink's success in excluding PRTC from the market for almost four years, there is a dangerous probability that OneLink will monopolize the relevant markets.

89.     As a result of said conduct, OneLink has harmed consumers and competition in the relevant product and geographic markets in the form of higher prices, lower quantity and lower quality of services.

90.     Because PRTC's injury flows from the same conduct that resulted in the injury to competition, the injury to PRTC constitutes antitrust injury.

91.     OneLink's exclusionary conduct with the specific intent to monopolize as alleged violates the Puerto Rico Anti-Monopoly Act, 10 P.R. Laws Ann. § 260.

92.     PRTC has been injured in its business or property by OneLink's attempt to monopolize the relevant markets as alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment be entered declaring that:

A.     Plaintiff has been injured in its business or property by Defendant's wrongful and anticompetitive conduct in violation of federal and state antitrust laws, and as a result, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, which are to be trebled.

B.     Plaintiff is entitled to recover the costs of this action and reasonable attorney's fees pursuant to 15 U.S.C. §15 and Puerto Rico law.

C.     Plaintiff is entitled to pre-judgment and post-judgment interest.

D.     The Court should enter such additional relief as it may find just and proper, including such other preliminary and permanent relief as is necessary and appropriate to foster competitive conditions in the markets affected by Defendant's unlawful conduct.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial, pursuant to Federal Rule of Civil Procedure 38(b), of all triable issues.

RESPECTFULLY SUBMITTED.

In San Juan, PR this 22nd day of November 2001.

Attorneys for: Puerto Rico Telephone Company, Inc.

Patrick J. Pascarella
Tucker Ellis & West LLP
925 Euclid Ave., Suite 1150
Cleveland, Ohio 44115
Tel.: 216-592-5000 / Fax: 216-592-5009
Email: patrick.pascarella@tuckerellis.com

Dylan M. Carson

_s/ Ricardo L. Ortiz-Colón_____
Ricardo L. Ortiz-Colón
USDC-PR No. 205510
Email: rortiz@fgrlaw.com
Luis A. Oliver
USDC-PR No. 209204
Email: loliver@fgrlaw.com

Fiddler González & Rodríguez, P.S.C

Tucker Ellis & West LLP
4600 S. Ulster St., Suite 1325
Denver, CO 80237
Tel.: 720-897-4400 / Fax: 720-222-5242
Email: dylan.carson@tuckerellis.com

PO Box 363507
San Juan, PR 00936-3507
Tel.: 787-759-3258 / Fax: 787-250-7545