UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO TELEPHONE COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> SAN JUAN CABLE LLC d/b/a ONELINK COMMUNICATIONS, <br><br> Defendant. | Civil No. 3:11-cv-2135-GAG |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF
ITS MOTION TO DISMISS AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

ARGUMENT .......................................................................................................1

    I.     DISMISSAL IS PROPER BECAUSE THIS MOTION DOES NOT
         RAISE FACT ISSUES, BUT RATHER CONCERNS ONLY WHETHER
         SUFFICIENT FACTS WERE PLEADED UNDER *TWOMBLY*
         STANDARDS TO RAISE A PLAUSIBLE "SHAM LITIGATION"
         CLAIM THAT COULD SURVIVE *NOERR-PENNINGTON* IMMUNITY ..........1

    II.    PRTC HAS SHOWN NO BASIS FOR SUSTAINING THE AMENDED
         COMPLAINT ON A "PATTERN" EXCEPTION THEORY ...............................5

    III.   PRTC HAS FAILED TO PLEAD FACTS SHOWING ANTITRUST
         INJURY ..........................................................................................6

    IV.   PRTC HAS MADE CLEAR THAT ITS TRUE PURPOSE HERE IS TO
         BURDEN THE EXERCISE OF FIRST AMENDMENT RIGHTS .......................7

    V.    PUBLIC POLICY CONSIDERATIONS ALSO COUNSEL STRONGLY
         AGAINST ALLOWING "SHAM LITIGATION" CLAIMS LIKE
         PRTC'S TO GO FORWARD ................................................................8

CONCLUSION ...................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

<u>Abraxis Bioscience, Inc</u>. v. <u>Navinta LLC</u>,
2008 WL 2967034 (D.N.J. July 31, 2008)................................................................2

<u>Adkins</u> v. <u>Children's Hosp</u>.,
261 U.S. 525 (1923)................................................................................................9

<u>Ashcroft</u> v. <u>Iqbal</u>,
556 U.S. 662, 129 S. Ct. 1937 (2009)....................................................................4

<u>Associated Gen. Contractors</u> v. <u>Cal. State Council of Carpenters</u>,
459 U.S. 519 (1983)................................................................................................2

<u>Austin</u> v. <u>Michigan Chamber of Commerce</u>,
494 U.S. 652 (1990)................................................................................................9

<u>Bell Atl. Corp</u>. v. <u>Twombly</u>,
550 U.S. 544 (2007)........................................................................................ *passim*

<u>Bowers</u> v. <u>Hardwick</u>,
478 U.S. 186 (1986)................................................................................................9

<u>Brandenburg</u> v. <u>Ohio</u>,
395 U.S. 444 (1969)................................................................................................9

<u>Brown</u> v. <u>Board of Education</u>,
347 U.S. 483 (1954)................................................................................................9

<u>Cal. Motor Transp. Co</u>. v. <u>Trucking Unlimited</u>,
404 U.S. 508 (1972)................................................................................................3

<u>Caplan</u> v. <u>Am. Baby, Inc.</u>,
582 F. Supp. 869 (S.D.N.Y. 1984) ........................................................................2

<u>Caribbean Broad. Sys., Ltd</u>. v. <u>Cable & Wireless plc</u>,
148 F.3d 1080 (D.C. Cir. 1998)............................................................................2

<u>Catch Curve, Inc</u>. v. <u>Venali, Inc.</u>,
519 F. Supp. 2d 1028 (C.D. Cal. 2007) ................................................................2

<u>Citizens United</u> v. <u>FEC</u>,
130 S. Ct. 876 (2010)............................................................................................9

Conley v. Gibson,
   355 U.S. 41 (1957)................................................................................................2, 9

Doctor Miles Med. Co. v. John D. Park & Sons Co.,
   220 U.S. 373 (1911)................................................................................................9

Dyno Nobel, Inc. v. Amotech Corp.,
   63 F. Supp. 2d 140 (D.P.R. 1999)................................................................................2

Guimerfe, Inc. v. Perez-Perdomo,
   2009 WL 918933 (D.P.R. Mar. 31, 2009) .............................................................3

Hammer v. Dagenhart,
   247 U.S. 251 (1918)................................................................................................9

Hoffman-LaRoche, Inc. v. Genpharm, Inc.,
   50 F. Supp. 2d 367 (D.N.J. 1999)................................................................................2

Hydranautics v. FilmTec Corp.,
   70 F.3d 533 (9th Cir. 1995) ...................................................................................2

In re Flonase Antitrust Litig.,
   795 F. Supp. 2d 300 (E.D. Pa. 2011) .....................................................................2

In re Neurontin Antitrust Litig.,
   2009 WL 2751029 (D.N.J. Aug. 28, 2009) ............................................................2

In re Prograf Antitrust Litig.,
   2012 WL 293850 (D. Mass. Feb. 1, 2012) ......................................................3-4, 6

In re Relafen Antitrust Litig.,
   346 F. Supp. 2d 349 (D. Mass. 2004) .....................................................................2

Landmarks Holding Corp. v. Bermant,
   664 F.2d 891 (2d Cir. 1981)....................................................................................5

Lawrence v. Texas,
   539 U.S. 558 (2003)................................................................................................9

Leegin Creative Leather Prods., Inc. v. PSKS, Inc.,
   551 U.S. 877 (2007)................................................................................................9

McConnell v. FEC,
   540 U.S. 93 (2003)................................................................................................9

Nabi Biopharmaceuticals v. Roxane Labs., Inc.,
   2007 WL 894473 (S.D. Ohio Mar. 21, 2007)........................................................2

New York Jets LLC v. Cablevision Sys. Corp.,
   2005 WL 3454652 (S.D.N.Y. Dec. 19, 2005) ........................................................2

Plessy v. Ferguson,
   163 U.S. 537 (1896)..............................................................................................9

Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc.,
   332 F.3d 6 (1st Cir. 2003)....................................................................................2

Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,
   508 U.S. 49 (1993).......................................................................................1, 4, 5

S. Middlesex Opportunity Council, Inc. v. Town of Framingham,
   752 F. Supp. 2d 85 (D. Mass. 2010) ....................................................................2

Scooter Store, Inc. v. SpinLife.com, LLC,
   777 F. Supp. 2d 1102 (S.D. Ohio 2011) ...........................................................4, 6

Skinder-Strauss Assocs. v. Mass. Continuing Legal Educ., Inc.,
   870 F. Supp. 8 (D. Mass. 1994) ...........................................................................2

Transkentucky Transp. R.R. v. Louisville & Nashville R.R. Co.,
   581 F. Supp. 759 (E.D. Ky. 1983) .....................................................................4-5

United States v. Darby,
   312 U.S. 100 (1941)..............................................................................................9

West Coast Hotel Co. v. Parrish,
   300 U.S. 379 (1937)..............................................................................................9

Whitney v. California,
   274 U.S. 357 (1927)..............................................................................................9

**STATUTES**

3 L.P.R.A. § 2102(j)......................................................................................................4

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 8(a)(2)...............................................................................................8, 9

Fed. R. Civ. P. 12(b)(1)..................................................................................................1

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 2

Defendant San Juan Cable LLC d/b/a OneLink Communications ("OneLink") respectfully submits this reply in further support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1), to dismiss the Amended Complaint ("Am. Compl.") filed in this action by plaintiff Puerto Rico Telephone Company, Inc. ("PRTC").

## ARGUMENT

## I.

## DISMISSAL IS PROPER BECAUSE THIS MOTION DOES NOT RAISE FACT ISSUES, BUT RATHER CONCERNS ONLY WHETHER SUFFICIENT FACTS WERE PLEADED UNDER *TWOMBLY* STANDARDS TO RAISE A PLAUSIBLE "SHAM LITIGATION" CLAIM THAT COULD SURVIVE *NOERR-PENNINGTON* IMMUNITY

PRTC argues that Rule 12(b)(6) dismissal of its Amended Complaint is improper because "sham litigation" claims and assertions of Noerr-Pennington immunity supposedly raise fact issues that cannot be resolved on a Rule 12(b)(6) motion. (See Opp. Mem. at 6-12.) PRTC's argument fundamentally misunderstands the nature of OneLink's motion.

OneLink does not seek to have this Court make a determination of the ultimate factual merits of whether any of the litigation activity about which PRTC complains was or was not "objectively baseless." OneLink's point is much simpler: The Amended Complaint fails to plead the kind of facts required under Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and its progeny (as opposed to just pleading naked legal conclusions) that could raise a "plausible" claim (as opposed to sheer speculation) that there had been "objectively baseless" litigation activity of the kind that Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49 (1993) ("PRE"), requires in order to plead a "sham litigation" claim that can survive Noerr-Pennington immunity. This is not a motion about determining or adjudicating the facts; it is a motion about insufficient pleading — the Amended Complaint's failure to allege facts sufficient to warrant forcing the parties and the Court into massive and expensive antitrust discovery. See Twombly, 550 U.S. at 558 (because "proceeding to antitrust discovery can be expensive . . . 'a district court must retain the power to insist upon some specificity in pleading

before allowing a potentially massive factual controversy to proceed'") (quoting <u>Associated Gen.</u> <u>Contractors</u> v. <u>Cal. State Council of Carpenters</u>, 459 U.S. 519, 528 n.17 (1983)).[1]

The cases PRTC relies upon in opposition do not involve this kind of <u>Twombly</u> pleading issue. They are either (1) cases where parties sought to have the court declare as a matter of law that their litigation conduct had not been "objectively baseless," on either a Rule 12(b) motion[2] or a summary judgment motion,[3] and/or (2) pre-<u>Twombly</u> Rule 12(b) rulings, made under the "no set of facts" standard of <u>Conley</u> v. <u>Gibson</u>, 355 U.S. 41, 45-46 (1957), that allowed complaints to survive on little more than a conclusory assertion about the nature of the defendant's conduct.[4]

Indeed, the few post-<u>Twombly</u> cases PRTC cites that are actually about pleading where Rule 12(b) dismissal was denied all make clear that the pleadings at issue therein presented specific factual allegations showing "objective baselessness" that went far beyond the empty

---

[1]   Thus, contrary to PRTC's assertions otherwise (Opp. Mem. at 8-11), OneLink's motion does not raise any disputed issues of fact, even though OneLink in passing did give the Court a heads-up about some of the Amended Complaint's more demonstrable falsehoods.  (See Motion at 3 n.2.)

[2]   See <u>In re Neurontin Antitrust Litig.</u>, 2009 WL 2751029, at *22 n.48 (D.N.J. Aug. 28, 2009) ("many of [movant's] arguments address the merits of Plaintiffs' claims, rather than the sufficiency of their pleadings"); <u>Abraxis Bioscience, Inc.</u> v. <u>Navinta LLC</u>, 2008 WL 2967034, at *6 (D.N.J. July 31, 2008) ("the Court emphasizes that it does not consider the merits of Defendant's Counterclaims").

[3]   See <u>In re Flonase Antitrust Litig.</u>, 795 F. Supp. 2d 300 (E.D. Pa. 2011); <u>S. Middlesex Opportunity Council, Inc.</u> v. <u>Town of Framingham</u>, 752 F. Supp. 2d 85 (D. Mass. 2010); <u>In re Relafen Antitrust Litig.</u>, 346 F. Supp. 2d 349 (D. Mass. 2004); <u>Dyno Nobel, Inc.</u> v. <u>Amotech Corp.</u>, 63 F. Supp. 2d 140 (D.P.R. 1999).

[4]   See <u>Catch Curve, Inc.</u> v. <u>Venali, Inc.</u>, 519 F. Supp. 2d 1028 (C.D. Cal. 2007); <u>Nabi Biopharmaceuticals</u> v. <u>Roxane Labs., Inc.</u>, 2007 WL 894473 (S.D. Ohio Mar. 21, 2007); <u>New York Jets LLC</u> v. <u>Cablevision Sys. Corp.</u>, 2005 WL 3454652 (S.D.N.Y. Dec. 19, 2005); <u>Hoffman-LaRoche Inc.</u> v. <u>Genpharm Inc.</u>, 50 F. Supp. 2d 367 (D.N.J. 1999); <u>Hydranautics</u> v. <u>FilmTec Corp.</u>, 70 F.3d 533 (9th Cir. 1995); <u>Skinder-Strauss Assocs.</u> v. <u>Mass. Continuing Legal Educ., Inc.</u>, 870 F. Supp. 8 (D. Mass. 1994); <u>Caplan</u> v. <u>Am. Baby, Inc.</u>, 582 F. Supp. 869 (S.D.N.Y. 1984); <u>see also</u> <u>Caribbean Broad. Sys., Ltd.</u> v. <u>Cable & Wireless plc</u>, 148 F.3d 1080 (D.C. Cir. 1998); <u>cf. also generally</u> <u>Podiatrist Ass'n, Inc.</u> v. <u>La Cruz Azul de Puerto Rico, Inc.</u>, 332 F.3d 6 (1st Cir. 2003) (discussing pre-<u>Twombly</u> caselaw about antitrust pleading, in a case outside the "sham litigation" context).  Indeed, PRTC itself relies mostly on pre-<u>Twombly</u> caselaw even in its introductory discussion of present-day Rule 12(b)(6) standards of review.  (See Opp. Mem. at 5-6.)

recitation of motions denied or actions dismissed seen in PRTC's Amended Complaint.  These cases only confirm, contrary to PRTC's arguments otherwise (see Opp. Mem. at 16-22), the insufficiency of pleading in the Amended Complaint.

In Guimerfe, Inc. v. Perez-Perdomo, 2009 WL 918933 (D.P.R. Mar. 31, 2009), for example, the complaint specifically alleged that the defendants "consciously committed to a common and collusive scheme of opposing every CNC application for the establishment of home care facilities," see id., at *2.  Indeed, as shown by the Guimerfe complaint that PRTC submitted (Request for Judicial Notice, Exh. D ¶ 50), the plaintiff there specifically charged:

> "50.  When a petition for a CNC . . . is filed . . . , [defendants] immediately file an opposition with the Department of Health.  They oppose every time and even have a portion of their revenue set out for law firms and economists that largely dedicate themselves to file oppositions to [such applications]."

Such an allegation is nearly identical to the extreme factual allegations that Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508 (1972), specifically identified as enabling the "sham litigation" claim there to survive.  Namely, that pleading alleged that the defendants had:

> "[a]greed jointly to finance and to carry out and publicize a consistent, systematic and uninterrupted program of opposing 'with or without probable cause and regardless of the merits' every application, . . . [and indeed] establish[ed] a trust fund to finance the foregoing, . . . ."

Id. at 518 (Stewart, J., concurring in the judgment).  Nothing even remotely approaching such detailed allegations of such extreme conduct appears in PRTC's Amended Complaint.

Similarly, while PRTC points to the decision a few weeks ago in In re Prograf Antitrust Litig., 2012 WL 293850 (D. Mass. Feb. 1, 2012), where an antitrust counterclaim that attacked the defendant's filing of a certain FDA petition survived a Rule 12 motion, the pleading there did not merely allege that "(1) the FDA found no merit to defendant's petition." Id., at *6.  Rather, its factual allegations went further to detail that:

> "(2) the materials provided by defendant failed to support its requested relief and, in particular, that the studies cited contained severe flaws in their methodology and design and reliance thereon was wholly unreasonable; (3) defendant 'cherry picked' the information it presented, omitted disclosing limitations contained in

the Taber study and misrepresented key information and conclusions from the other studies to mislead the FDA; and (4) the relief requested in the petition was unnecessary (and therefore baseless) because extensive monitoring of tacrolimus patients is already required and would have detected any issues related to switching from Prograf to the generic formulation."

Id.[5]  Here again, nothing even remotely of this kind is set forth in PRTC's Amended Complaint.[6]

What PRTC asks this Court to adopt is essentially a pleading tautology based solely on outcome:  If a case was dismissed, PRTC argues, then that must mean it was meritless, and if so then that alone is enough to raise a sufficient issue as to whether it was "objectively baseless" under PRE so as to sustain a "sham litigation" claim at the pleading stage.  But this argument is flatly inconsistent with PRE's admonition against "concluding that an ultimately unsuccessful action must have been unreasonable or without foundation."  508 U.S. at 60 n.5.  "The court must remember that 'even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.'"  Id.  An adverse outcome is thus merely "consistent with," but does not itself show, "objective baselessness."  Facts beyond the mere outcome therefore need to be alleged in order to make the "sham litigation" claim "plausible."  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 557).  PRTC, however, has not alleged any such facts here.[7]

---

[5]   By contrast, while PRTC attacks OneLink's pursuit of intervenor status up to the Puerto Rico Supreme Court as being legally unfounded and unnecessary given OneLink's right to participate as a member of the public (Opp. Mem. at 17-20), neither is correct.  Formal intervenor status involves a very different set of legal rights than the mere ability to offer a public comment.  See 3 L.P.R.A. § 2102(j) (intervenor is a "party").  Moreover, the extent of OneLink's intervention rights in this situation was hardly well-settled.  The Puerto Rico Supreme Court specifically stated in its ruling that it had "[n]ever before . . . spoken" on this issue.  (Request for Judicial Notice, Exh. A at 36.)  The novelty of this legal issue precludes terming OneLink's actions "baseless."  (See Motion at 15-16.)

[6]   Compare also Scooter Store, Inc. v. SpinLife.com, LLC, 777 F. Supp. 2d 1102, 1115 (S.D. Ohio 2011) (underlying trademark infringement action was sufficiently pled to have been baseless given specific allegation that infringement action was filed against the use of a mark in a different class of goods or services than that for which the trademark was registered).

[7]   PRTC attempts to rely on some pre-PRE/pre-Twombly lower-court caselaw about what suffices to make out a "sham litigation" claim (see Opp. Mem. at 16), but even those cases presented specific allegations of facts showing baselessness, not merely an adverse outcome.  See Transkentucky

(Cont'd on following page)

Indeed, to adopt PRTC's argument would lead to extreme and untenable results. Since PRE recognized that even a single "objectively baseless" lawsuit can serve as the basis of a "sham litigation" claim, see 508 U.S. at 60-61 (accord Opp. Mem. at 15), PRTC's argument would mean that whenever any lawsuit is dismissed under Rule 12 or Rule 56, or fails at trial, the prevailing party by that mere fact alone could plead a plausible "sham litigation" claim against the loser. This is precisely the result that PRE cautioned against. This would also be a remarkably curious result in a legal system that rejects "loser pays" rules for litigation as a general matter. Indeed, under PRTC's theory, a sizable portion of the federal civil docket at any given moment must necessarily be subject to antitrust attack as "objectively baseless." No "plausible" theory of pleading "objective baselessness" could yield such overreaching results. The Court should reject PRTC's strained theory and dismiss the Amended Complaint for failure to have pleaded facts that show not just instances of lack of litigation success, but actual "objective baselessness," as PRE and Twombly require.

## II.

### PRTC HAS SHOWN NO BASIS FOR SUSTAINING THE AMENDED COMPLAINT ON A "PATTERN" EXCEPTION THEORY

PRTC does nothing to rebut OneLink's showing that the widely discredited notion of a "pattern" exception to PRE's requirement that "sham" litigation be "objectively baseless" is inconsistent with PRE and is not followed by the majority of district courts. (See Motion at 16-20). PRTC further offers no response to the Amended Complaint's failure to allege a sufficient volume of proceedings to invoke such an exception even under its terms (see Motion at 20-22), but merely persists in trying to count individual motions and appeals as discrete proceedings (see

---

(Cont'd from preceding page)

Transp. R.R. v. Louisville & Nashville R.R. Co., 581 F. Supp. 759, 769-70 (E.D. Ky. 1983) (allegations that defendant "knowingly presented false and misleading evidence"); Landmarks Holding Corp. v. Bermant, 664 F.2d 891, 896 (2d Cir. 1981) (allegations that defendants obtained delays by misrepresentations to the Court that they privately acknowledged were "purely bull").

Opp. Mem. at 23).  Notwithstanding these problems,  PRTC simply urges this Court to latch onto the "pattern" theory.  (See Opp. Mem. at 22-23.)  PRTC certainly cannot find support for ignoring PRE's requirements in this context by pointing to comments in an FTC Staff Report. (See Opp. Mem. at 23 n.14.)  Noerr-Pennington is fundamentally a First Amendment doctrine (Motion at 1, 9-10), and the FTC has no expertise in, and is not charged with the responsibility for implementing, that area of the law.  That responsibility lies with the Supreme Court, which spoke to that issue in PRE.  It is the Supreme Court's dictates alone that should be honored here.

## III.

## PRTC HAS FAILED TO PLEAD FACTS SHOWING ANTITRUST INJURY

PRTC's opposition to this motion also serves to confirm that it failed to allege in the Amended Complaint any facts plausibly showing the required "antitrust injury."  For example, while PRTC repeatedly cites the decision in In re Prograf for other purposes in its opposition, it ignores that case's discussion of antitrust injury.  That discussion held antitrust injury adequately pleaded by quoting at length plaintiffs' detailed factual allegations clearly demonstrating that defendants' actions were a but-for cause of delaying plaintiffs' generic drug from reaching the market.  These allegations included statements from the FDA "in public filings" deeming the delay "directly attributable to the need to evaluate and respond to [the defendants' filing]."  2012 WL 293850, at *7 (quotations omitted, emphasis in original).  There is no similar allegation from PRTC here, however.  Similarly, unlike the allegations made in Scooter Store (also relied upon by PRTC), there is no allegation here that the cost of defending its application in any way kept PRTC from the market.  Compare 777 F. Supp. 2d at 1115.

What the Amended Complaint here does show is PRTC complaining about OneLink's various filings and submissions to the Board without ever alleging that the Board was under any obligation to address them, and further alleging that the Board in fact believed "OneLink . . .  had nothing to contribute."  (See Opp. Mem. at 10-11.)  Such admissions are utterly inconsistent with a contention that the Board delays of which PRTC complains were due to the Board's need to

6

grapple with OneLink's submissions.  Similarly, PRTC attempts to imply (without alleging any actual facts) that OneLink must have been the but-for cause of the Board's inability to dispose of PRTC's initial application within 180 days (Opp. Mem. at 4; Am. Compl. ¶ 29), but the Board in fact explained that it needed further hearings past that date because "the information submitted by [PRTC] is insufficient . . . ."  Resolution and Order, <u>Coqui.Net Corp</u>., JRT-2008-CCG-0001 (Aug. 27, 2008) (certified translation); <u>see also</u> Resolution and Order, <u>P.R. Tel. Co</u>., JRT-2008-CCG-0002 (Jul. 14, 2011) (requiring PRTC to submit new information and clarify previously provided information at hearing scheduled more than 180 days after Board resumed PRTC's franchise proceeding).  OneLink cannot be blamed for delays caused by PRTC's own failings.

In sum, there are simply no facts alleged in the Amended Complaint which "plausibly" show any "antitrust injury" causally linked to any OneLink conduct that is outside the scope of <u>Noerr</u>-<u>Pennington</u> immunity.

## IV.

### PRTC HAS MADE CLEAR THAT ITS TRUE PURPOSE HERE IS TO BURDEN THE EXERCISE OF FIRST AMENDMENT RIGHTS

PRTC makes little effort to hide its true agenda in this litigation and on this motion.  Rather than have the sufficiency of its pleading subjected to scrutiny, PRTC repeatedly urges that the Court direct the parties to proceed with discovery first.  (<u>See</u> Opp. Mem. at 5-11.)  This, of course, is precisely what <u>Twombly</u> instructed courts <u>not</u> to do — allow plaintiffs to subject defendants to the burdens and cost of expensive antitrust discovery without a threshold showing of well-pleaded facts "plausibly" suggesting a valid claim:

> "[I]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, . . . but quite another to forget that proceeding to antitrust discovery can be expensive.  As we indicated over 20 years ago . . . , 'a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.'"

<u>Twombly</u>, 550 U.S. at 558 (citations omitted).  That is why there is a "need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [actionable conduct]" — a

requirement that "reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  Id. at 557.

PRTC's agenda is plainly to burden OneLink's exercise of its First Amendment rights and chill future such exercises, by using this lawsuit to attach expensive discovery burdens to each such exercise, without regard to whether PRTC has alleged anything against OneLink that could pass muster under Twombly.  Indeed, since PRTC was itself a party to the very litigations and other proceedings in which it claims that OneLink engaged in "baseless" conduct, PRTC plainly would have no need for discovery to learn what OneLink did therein.

PRTC's anti-First Amendment agenda is also tellingly laid bare by its indignant accusation that OneLink has not only petitioned for redress in the courts but also has complained and made statements to "the press" about PRTC's actions.  (See Opp. Mem. at 20; see also Am. Compl. ¶¶ 4, 56.)  Whatever the dimensions of the Noerr-Pennington "sham" exception (see Motion at 11-12), it has never purported to make speaking to the press actionable conduct under the antitrust laws.  Indeed, speaking in the public square is the very activity the First Amendment is designed to protect and that PRTC seeks to squelch. The Court should reject PRTC's attempt through this litigation to muzzle public disclosure and discussion of its illegal activities.

## V.

## PUBLIC POLICY CONSIDERATIONS ALSO COUNSEL STRONGLY AGAINST ALLOWING "SHAM LITIGATION" CLAIMS LIKE PRTC'S TO GO FORWARD

Lastly, it cannot go without mention how extraordinarily pernicious it would be — not just from the standpoint of the First Amendment but also of public policy generally — if the Court were to follow PRTC's minimalist theory for what suffices to plead "objective baselessness," and thereby sustain PRTC's "sham litigation" antitrust claim.  To cite a fairly obvious example of where PRTC's approach would lead, should the proprietors of segregated lunch counters and the operators of segregated public transit have been able to strangle the litigation strategy of the Civil Rights Movement in its cradle with expensive antitrust litigation

based on the premise that <u>Plessy</u> v. <u>Ferguson</u>, 163 U.S. 537 (1896), was the settled law of the land, and that challenges to its holding were thus by definition "objectively baseless"?  Was it not in fact entirely fitting and proper that there were decades of uphill litigation (oftentimes unsuccessful, particularly in the early days), that resulted in <u>Plessy</u>'s ultimately being reversed in <u>Brown</u> v. <u>Board of Education</u>, 347 U.S. 483 (1954)?  There is no shortage of examples in our legal history where, through litigation, parties overturned what had appeared for many years to be settled and immutable law — not just in constitutional law cases,[8] but also in ordinary matters of statutory law[9] and even civil procedure.[10]

As Chief Justice Roberts has stated, "<u>stare decisis</u> is neither an 'inexorable command' nor 'a mechanical formula of adherence to the latest decision.'"  <u>Citizens United</u>, 130 S. Ct. at 920 (concurring opinion) (citations omitted).  The Court should view with great trepidation a theory for sustaining attacks on litigation activity as "objectively baseless" that would effectively freeze the law in amber, by allowing the threat of antitrust penalties to be used to chill or punish attempts to change or challenge it.  That is precisely what PRTC seeks to do here.

PRTC is no different from any other litigant who may have experienced the frustration of having spent a few years in litigation.  There is nothing so unusual about PRTC's experience that

---

[8]   <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Darby</u>, 312 U.S. 100 (1941), <u>overruling</u> <u>Hammer</u> v. <u>Dagenhart</u>, 247 U.S. 251 (1918) (re constitutionality of federal child labor laws); <u>West Coast Hotel Co.</u> v. <u>Parrish</u>, 300 U.S. 379 (1937), <u>overruling</u> <u>Adkins</u> v. <u>Children's Hosp.</u>, 261 U.S. 525 (1923) (re constitutionality of state minimum wage laws); <u>Brandenburg</u> v. <u>Ohio</u>, 395 U.S. 444 (1969), <u>overruling</u> <u>Whitney</u> v. <u>California</u>, 274 U.S. 357 (1927) (re test for when a state can proscribe speech under the First Amendment); <u>Lawrence</u> v. <u>Texas</u>, 539 U.S. 558 (2003), <u>overruling</u> <u>Bowers</u> v. <u>Hardwick</u>, 478 U.S. 186 (1986) (re constitutionality of state sodomy laws); <u>Citizens United</u> v. <u>FEC</u>, 130 S. Ct. 876 (2010) <u>overruling</u>  <u>Austin</u> v. <u>Michigan Chamber of Commerce</u>, 494 U.S. 652 (1990), and <u>overruling</u> <u>in part</u> <u>McConnell</u> v. <u>FEC</u>, 540 U.S. 93 (2003) (re constitutionality of restricting corporate political expenditures).

[9]   <u>See</u>, <u>e.g.</u>, <u>Leegin Creative Leather Prods., Inc.</u> v. <u>PSKS, Inc.</u>, 551 U.S. 877 (2007), <u>overruling</u> <u>Doctor Miles Med. Co.</u> v. <u>John D. Park & Sons Co</u>., 220 U.S. 373 (1911) (re whether resale price maintenance should be treated as a <u>per se</u> violation of § 1 of the Sherman Act).

[10]   <u>See</u>, <u>e.g.</u>, <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544 (2007), <u>overruling</u> <u>Conley</u> v. <u>Gibson</u>, 355 U.S. 41 (1957) (re the proper test for whether a pleading satisfies Fed. R. Civ. P. 8(a)(2)).

warrants turning the theory of our legal system, and indeed of the First Amendment, on its head in order to furnish PRTC a remedy for litigation burdens that our system routinely requires other litigants to bear on their own.  PRTC has not pleaded any facts showing any actionable conduct by OneLink.  The "sham litigation" claims in the Amended Complaint should therefore be dismissed.

## **CONCLUSION**

For the foregoing reasons, and those set forth in its opening memorandum, OneLink respectfully requests that its motion to dismiss the Amended Complaint be granted in its entirety and with prejudice.

RESPECTFULLY SUBMITTED, in San Juan, Puerto Rico, on March 9, 2012.

WE HEREBY CERTIFY that, on this same date, a copy of the foregoing was filed electronically with the Clerk of the Court by means of the CM/ECF System, which will provide notice to all counsel of record in this case.

Pedro A. Delgado Hernandez
Salvador J. Antonetti-Stutts
Mauricio O. Muñiz-Luciano
O'NEILL & BORGES
American International Plaza
250 Muñoz Rivera Ave., Suite 800
San Juan, Puerto Rico 00918-1813
Tel. (787) 764-8181
Fax (787) 753-8944
pedro.delgado@oneillborges.com
salvador.antonetti@oneillborges.com
mauricio.muniz@oneillborges.com
*Counsel to Defendant San Juan Cable LLC*
*d/b/a OneLink Communications*

s/Salvador J. Antonetti-Stutts
Salvador J. Antonetti-Stutts
USDC-PR 215002

s/Mauricio O. Muñiz-Luciano
Mauricio O. Muñiz-Luciano
USDC-PR 220914

OF COUNSEL:

Dana Frix
David H. Evans
CHADBOURNE & PARKE LLP
1200 New Hampshire Ave., NW
Washington, DC  20036
Tel. (202) 974-5600
Fax (202) 974-5602
dfrix@chadbourne.com
devans@chadbourne.com

Robert A. Schwinger
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY  10112
Tel. (212) 408-5100
Fax (212) 541-5369
rschwinger@chadbourne.com