# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **PUERTO RICO TELEPHONE COMPANY, INC.,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. 11-2135-GAG-BJM** |
| **SAN JUAN CABLE LLC d/b/a OneLink Communications,** | **ORAL ARGUMENT REQUESTED** |
| **Defendant.** | |

---

## DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

OF COUNSEL:

Thomas Demitrack
Tracy K. Stratford
Brian K. Grube
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Telephone: (216) 586-3939
Fax: (216) 579-0212

Michael R. Shumaker
Kathryn M. Fenton
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3939
Fax: (202) 626-1700

Orlando Fernandez/USDC-PR 126912
ORLANDO FERNANDEZ LAW OFFICES
Capital Center Building, South Tower
Arterial Hostos, PH-1 Suite 1204
San Juan, PR 00918-1477
Telephone: (787) 294-5698
Fax: (787) 294-5699

**Counsel for Defendant San Juan Cable LLC
d/b/a OneLink Communications**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

I.   INTRODUCTION ...................................................................................................... 1

II.  FACTUAL BACKGROUND .................................................................................... 3

    A.   PRTC's First Franchise Application, Filed in February 2008, Is Denied on the Merits by the TRB in November 2008 ........................................................... 4

    B.   The TRB's Consideration of PRTC's Second Franchise Application, Filed in December 2008, Is Stayed by the Puerto Rico Courts until October 2010 ............................................................................................................................ 4

    C.   Other Litigation Occurs While the TRB Proceeding Is Stayed by Order of the Puerto Rico Courts, But None of That Litigation Has Any Effect on the TRB's Consideration of PRTC's Second Franchise Application ................... 6

    D.   Once the Supreme Court Lifts Its Stay in October 2010, the TRB Considers the PRTC Application on its Own Schedule Until November 2011 ............................................................................................................................ 7

    E.   The TRB Orders Conditional Approval in November 2011, But Chooses Not To Sign the Final Franchise Agreement Until February 2012 ....................... 8

III. STANDARD OF REVIEW ........................................................................................ 9

IV.  ARGUMENT ............................................................................................................ 10

    A.   Parties Are Immune from Liability for Antitrust Injury That Is Caused by State Action, Even if They Made "Sham" Requests for Such Action ................. 11

    B.   PRTC's Alleged Antitrust Injury Is Traceable Only to Immune State Action by the Puerto Rico Courts and the TRB .................................................. 17

V.   CONCLUSION ......................................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

CASES

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
    486 U.S. 492 (1988)...................................................................................2, 13, 15, 19

*Armstrong Surgical Center, Inc. v. Armstrong County Memorial Hospital*,
    185 F.3d 154 (3d Cir. 1999)..............................................................16, 18, 20, 21

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...................................................................................................9

*Columbia v. Omni Outdoor Adver., Inc.*,
    499 U.S. 365 (1991)....................................................................................... passim

*Davric Maine Corp. v. Rancourt*,
    216 F.3d 143 (1st Cir. 2000)................................................................................14

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
    365 U.S. 127 (1961).......................................................................................passim

*Hemi Grp., LLC v. City of N.Y.*,
    559 U.S. 1 (2010)...................................................................................................13

*Interface Grp., Inc. v. Mass. Port Auth.*,
    816 F.2d 9 (1st Cir. 1987)....................................................................................11

*Iverson v. City of Boston*,
    452 F.3d 94 (1st Cir. 2006)....................................................................................9

*Juster Assocs. v. City of Rutland, Vt.*,
    901 F.2d 266 (2d Cir. 1990)..........................................................................16, 20

*Knology, Inc. v. Insight Communications Co.*,
    393 F.3d 656 (6th Cir. 2004) .......................................................................17, 20

*Lawline v. American Bar Association*,
    956 F.2d 1378 (7th Cir. 1992) .....................................................................16, 20

*Morales v. Monagas*,
    723 F. Supp. 2d 416 (D.P.R. 2010) (Gelpi, J.)...................................................9

*OneLink Communications v. Puerto Rico Telephone Co., et al.*,
    Case No. CC-2010-146 ...........................................................................................7

*Parker v. Brown*,
    317 U.S. 341 (1943)............................................................................................. passim

*Puerto Rico Tel. Co. v. San Juan Cable, LLC*,
    885 F. Supp. 2d 534 (D.P.R. 2012)..................................................................1, 10

*San Juan Cable LLC v. Puerto Rico Tel. Co.*,
    612 F.3d 25 (1st Cir. 2010), *aff'g*, 623 F. Supp. 2d 189 (D.P.R. 2009)....................................6

*Sandy River Nursing Care v. Aetna Cas.*,
    985 F.2d 1138 (1st Cir. 1993)..............................................................2, 14, 20, 21

*Sessions Tank Liners, Inc. v. Joor Mfg., Inc.*,
    17 F.3d 295 (9th Cir. 1994) ...............................................................2, 15, 20, 21

*Sullivan v. Nat'l Football League*,
    34 F.3d 1091 (1st Cir. 1994)................................................................10, 11

*United Mine Workers of Am. v. Pennington*,
    381 U.S. 657 (1965)................................................................................3

**STATUTES AND RULES**

15 U.S.C. § 15(a) ......................................................................................11

42 U.S.C. § 1983........................................................................................8

Fed. R. Civ. P. 56(c) ...................................................................................9

**OTHER AUTHORITIES**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law*, § 202c (3d ed. 2006)....................14, 20

# I.    INTRODUCTION

Plaintiff Puerto Rico Telephone Company ("PRTC") alleges that defendant San Juan Cable LLC d/b/a OneLink Communications ("OneLink") violated the antitrust laws by filing lawsuits and appeals, without regard to their merit, that effectively "delayed [PRTC's] entry into the market" for video services, thereby protecting OneLink's alleged monopoly power. *Puerto Rico Tel. Co. v. San Juan Cable, LLC*, 885 F. Supp. 2d 534, 538 (D.P.R. 2012) ("MTD Op.").

To prove that claim, PRTC in discovery has sought to show that OneLink's lawyers filed baseless and sanctionable claims. Thankfully, there is no need (or warrant) for this Court or the parties to go to trial on the question whether OneLink and its counsel—including prominent attorneys such as Pedro Delgado Hernandez, Salvador Antonetti Stutts, and Guillermo Arbona Lago, along with the law firms of O'Neill & Borgess and Chadbourne & Parke as well as former New York Governor George Pataki—engaged in "sham" litigation, "without regard to the merits," MTD Op., 885 F. Supp. 2d at 537. Nor is there need to incur the substantial costs that are inevitably associated with conducting expert disclosures and discovery concerning issues such as whether satellite and other forms of video entertainment compete with cable. This is because, after nearly a year of discovery (and after the close of fact discovery), it has become clear that PRTC's claims fail as a matter of law, for an independent—but fundamental—reason. And no further discovery will change this inescapable conclusion: OneLink's lawsuits simply did not cause the injury that PRTC has consistently alleged as the basis for its antitrust claim.

PRTC's alleged antitrust injury here is its delayed entry into the business of providing an IPTV-based video service: The Telecommunications Regulatory Board of Puerto Rico ("TRB") failed to approve PRTC's two franchise applications for "almost four years," a delay PRTC attributes to "OneLink's baseless litigation." (Amended Complaint ("Am. Compl."), Dkt. 11, ¶ 5.) However, the undisputed—and indisputable—facts and chronology show that the claimed

delays are directly traceable to *governmental acts*, specifically, in turn, to (i) the TRB's *denial on the merits* of PRTC's first franchise application; (ii) stays of the TRB proceeding on PRTC's second franchise application that were *validly issued by Puerto Rico courts*; (iii) the TRB's own *independent schedule* in acting on PRTC's second application; and (iv) the TRB's *voluntary decision* to withhold its approval of the final franchise agreement with PRTC from late November 2011 until February 2012. In short, OneLink's conduct did not *cause* the claimed delays forming the basis for PRTC's alleged injury—and so OneLink obviously cannot be liable for those delays or their consequences.

Nor can PRTC evade this fundamental defect in its case by alleging that OneLink's litigation caused the Puerto Rico courts to issue stays in 2009-2010 that delayed TRB action, or that OneLink induced the TRB's review schedule or agreement to briefly withhold its approval in late 2011. The concrete acts that harmed PRTC were *governmental* acts, not private acts, and are therefore immune from antitrust liability. It is well established that the state is absolutely immune from antitrust liability for its own acts. And the Supreme Court, U.S. Court of Appeals for the First Circuit, and other federal appellate courts have repeatedly held that private parties cannot be held liable for the anticompetitive effects of government action either—even if those parties asked for that action and even if their petitions for such action were "shams" intended only to cause harm. *See, e.g.*, *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988); *Sandy River Nursing Care v. Aetna Cas.*, 985 F.2d 1138, 1144 (1st Cir. 1993); *Sessions Tank Liners, Inc. v. Joor Mfg., Inc.*, 17 F.3d 295, 299-301 (9th Cir. 1994). The basic principle is that a state actor's *independent* decision is an intervening cause, breaking the chain of causation and precluding the imposition of liability on the private actor. That principle fully applies here, and it bars PRTC's theory of liability as a matter of law.

PRTC pretends that this is a traditional "predatory litigation" suit. But it is not. Under the *Noerr-Pennington* doctrine, *see E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965), litigation conduct is ordinarily protected from liability by the First Amendment, subject to a narrow exception that a litigant may be held liable for "direct injury" caused by its "sham" litigation. *See Noerr*, 365 U.S. at 146. But PRTC's theory is not that OneLink's litigation caused it *direct* anticompetitive harm in the market—such as by stigmatizing PRTC or by draining its resources so that it could no longer compete. Rather, its theory is (and must be, given its Complaint and the undisputed facts) that OneLink's litigation caused the *Puerto Rico courts* and the *TRB itself* to consciously postpone PRTC's approval. Yet those state actions are *absolutely immune from any antitrust liability*, whether they were induced by "sham" litigation or not.

For these reasons, there is no need to go to trial on whether OneLink and its well-known, highly competent, and reputable counsel were engaged in over three years of "sham" litigation, or to continue with costly, distracting, burdensome, and increasingly acrimonious expert discovery into that same question. Fact discovery is over, and the undisputed facts establish OneLink's immunity here. OneLink is entitled to summary judgment, and this case should promptly be brought to an end.

## II. <u>FACTUAL BACKGROUND</u>

Because PRTC's antitrust claim is all about *timing*, the chronology is critical. The time period in question extends from February 2008, when PRTC filed its first franchise application with the TRB, until February 2012, when the TRB ultimately signed a franchise agreement with PRTC, giving it full permission to operate a video network. For the Court's convenience, a timeline depicting the relevant events during this interval can be found at the end of this brief.

**A.    PRTC's First Franchise Application, Filed in February 2008, Is Denied on the Merits by the TRB in November 2008.**

PRTC filed its first application for a video franchise in February 2008, through an affiliate known as Coqui.net.  (Am. Compl. ¶ 35; Statement of Undisputed Material Facts ("SMF") ¶ 1.)  The TRB unanimously denied the application on the merits on November 12, 2008.  (SMF ¶ 2.)  The TRB found that Coqui.net had been reluctant to reveal vital information to the TRB; that it had illegally begun to build a video network before receiving a franchise; and that its written application and oral presentation materially diverged.  (*In re: Coqui.Net Corp. d/b/a Claro TV*, Case No: JRT-2008-CCG-0001, Resolution and Order of November 12, 2008, at 4-5 (JRTPR) (Exh. A to Grube Decl.).) The TRB said that it based its decision on the application and on testimony submitted during a hearing held in September-October 2008.  (SMF ¶ 3.)

OneLink filed no litigation during the time period that PRTC's video franchise application was pending, February 2008 through November 2008.  (SMF ¶ 4.)

**B.    The TRB's Consideration of PRTC's Second Franchise Application, Filed in December 2008, Is Stayed by the Puerto Rico Courts until October 2010.**

After the TRB denied Coqui.net's application, PRTC filed a second franchise application, on December 11, 2008.  (SMF ¶ 5.)  Puerto Rico law contemplates a decision on such an application within 180 days (about six months).  (Am. Compl. ¶ 29.)  PRTC moved for expedited consideration, seeking to shorten the period for decision to 90 days (about three months), and the TRB granted that request.  (Request for Expedited Consideration of Puerto Rico Telephone Co., Inc.'s Application for Authorization to Provide Video Service, *In re: Puerto Rico Telephone Company d/b/a Claro TV*, Case No. JRT-2008-CCG-0002, (JRTPR Dec. 11, 2008) (Exh. I to Grube Decl.); *In re: Puerto Rico Telephone Company d/b/a Claro TV*, Case No. JRT-2008-CCG-0002, Resolution and Order of January 9, 2009 (JRTPR) (Exh. J to Grube Decl.).)  The TRB initially set a hearing on PRTC's application for February 11-13, 2009, which it later moved to

March 4-6, 2009.  (*In re: Puerto Rico Telephone Company d/b/a Claro TV*, Case No. JRT-2008-CCG-0002, Resolution and Order of January 23, 2009 (JRTPR) (Exh. K to Grube Decl.).)  On March 2, the TRB denied OneLink's petition to intervene in the proceeding to consider the second franchise application.  (Am. Compl. ¶ 41.)  The very next day, OneLink appealed.  (*Id.*)

On March 3, 2009, the Puerto Rico Court of Appeals stayed the TRB's consideration of PRTC's application, to preserve the status quo while it reviewed whether OneLink had a right to intervene in the TRB proceeding.  (SMF ¶ 6.)  The Court issued its stay order prior to the expiration of the 90-day period and prior to the TRB's scheduled hearing on PRTC's application.

The Puerto Rico Court of Appeals affirmed the TRB's denial of intervention on March 31, 2009.  (Am. Compl. ¶ 42; *San Juan Cable LLC h/n/c OneLink Communications v. PRTC h/n/c Claro TV, et al.*, Case No: KLRA200900260, Sentence of March 31, 2009 (TAPR) (Exh. L to Grube Decl.).)  The TRB then rescheduled the hearing on PRTC's second franchise application for May 21, 2009.  (*In re: Puerto Rico Telephone Company d/b/a Claro TV*, Case No. JRT-2008-CCG-0002, Resolution and Order of April 23, 2009 (JRTPR) (Exh. M to Grube Decl.).)  OneLink, however, filed a petition for certiorari on May 14, and the Puerto Rico Supreme Court granted review—and, unusually, set the case for oral argument.  (*San Juan Cable LLC h/n/c OneLink Communications v. PRTC h/n/c Claro TV, et al.*, Case No: CC-2009-380, Order of May 20, 2009 (TSPR) (Exh. D to Grube Decl.); *San Juan Cable LLC, h/n/c OneLink Communications v. PRTC h/n/c Claro TV, et al.*, No. CC-2009-380, Resolution of September 18, 2009 (TSPR) (Exh. N to Grube Decl.).)  Critically, on May 20, 2009, the Supreme Court also extended the stay.  (SMF ¶ 7.)  The TRB was thus unable to act on PRTC's second application, or proceed with the scheduled hearing, until the Puerto Rico Supreme Court subsequently affirmed the intervention denial and finally lifted the stay on October 26, 2010.  (*Id.*)

**C.    Other Litigation Occurs While the TRB Proceeding Is Stayed by Order of the Puerto Rico Courts, But None of That Litigation Has Any Effect on the TRB's Consideration of PRTC's Second Franchise Application.**

While the TRB proceeding was stayed by the Puerto Rico courts, OneLink and PRTC engaged in litigation in several forums.  Because of the stays in effect, none of those cases had any effect on the TRB's schedule with respect to PRTC's second franchise application, and therefore none of those cases is material to the resolution of this motion.

*Federal Suits.*  OneLink filed two federal suits relating to PRTC's illegal construction of its video network prior to receipt of a government franchise, which the TRB had sanctioned through the grant of special temporary authority ("STA"), contrary to federal law.  The first was filed while OneLink's intervention motion was pending before the TRB.  (Am. Compl. ¶ 38.) This Court found that OneLink was likely to succeed on the merits, which caused PRTC to withdraw its request for the STA, mooting the case.  (*Id*.)  That successful lawsuit did not have any effect on the franchise application process.

PRTC's unlawful activities continued, and OneLink refiled its suit on April 2, 2009, at this Court's suggestion.  (Am. Compl. ¶ 39; Tr. of Oral Hearing at 34-35, *San Juan Cable LLC d/b/a OneLink Commc'ns v. Telecommunications Regulatory Board of Puerto Rico, et al*., No. 09-v-01119-GAG (D.P.R. March 27, 2009) (Exh. O to Grube Decl.).)  By that point, the TRB proceedings had already been stayed by the Puerto Rico courts.  The second suit was dismissed on procedural grounds.  *See San Juan Cable LLC v. Puerto Rico Tel. Co.*, 623 F. Supp. 2d 189 (D.P.R. 2009), *aff'd*, 612 F.3d 25 (1st Cir. 2010).  Notably, this second suit was resolved in its entirety *before* the Puerto Rico Supreme Court's stay was lifted and it therefore did not affect the TRB's schedule in acting on PRTC's application.  (This second federal suit was pending during the seven-week period between the expiration of the Puerto Rico Court of Appeals' stay on March 31, 2009, and the issuance of the Puerto Rico Supreme Court's stay on May 20, 2009, but

the lawsuit did not name or seek to enjoin the TRB, which acted during this period by setting a hearing for May 21, 2009, which ultimately was cancelled pursuant to the Supreme Court's stay. (*In re: Puerto Rico Telephone Company d/b/a Claro TV*, Case No. JRT-2008-CCG-0002, Resolution and Order of April 23, 2009 (JRTPR) (Exh. M to Grube Decl.).))

*State Suits.* During the pendency of the Puerto Rico Supreme Court stay, OneLink also pursued two related cases in the Puerto Rico courts. Both cases were initiated and concluded while the Supreme Court's stay of the TRB proceeding was in effect, and therefore neither had any impact on that proceeding. In the first case, OneLink complained that PRTC had continued to engage in illegal construction; it was filed in July 2009 and concluded in January 2010. (Am. Compl. ¶¶ 45, 48.) The second case sought to require the TRB to promulgate certain regulations; it was filed in November 2009 and concluded on August 20, 2010. (Am. Compl. ¶ 46; *San Juan Cable LLC h/n/c OneLink Communications v. Puerto Rico Telephone Co., et al.*, Case No. CC-2010-146, Resolution and Order of Aug. 20, 2010 (TSPR) (Exh. P to Grube Decl.).)

*TRB Proceedings.* Apart from these suits, OneLink asked the TRB on February 25, 2009, to dismiss PRTC's second franchise application. (Am. Compl. ¶ 40.) A week later, as noted, the TRB denied OneLink's motion to intervene, and it thereafter ignored this motion. (*Id.*) Unrelated to the franchise application, OneLink also filed with the TRB a motion for order to show cause based on PRTC's illegal construction, which the TRB similarly never acted on. (Am. Compl. ¶ 43.)

### D. Once the Supreme Court Lifts Its Stay in October 2010, the TRB Considers the PRTC Application on its Own Schedule Until November 2011.

When the Puerto Rico Supreme Court lifted the stay at the end of October 2010, there was no litigation involving OneLink and relating to PRTC pending in any court. (SMF ¶ 8.) Thus, the TRB was free to act on its own terms and its own schedule. (Am. Compl. ¶ 50.) The

TRB formally resumed its proceedings on November 24, 2010 (*In re: Puerto Rico Telephone Co. d/b/a Claro TV*, Case No. JRT-2008-CCG-0002, Resolution and Order of December 21, 2010 (JRTPR) (Exh. Q to Grube Decl.)), and ultimately issued an order granting the PRTC franchise application—subject to certain conditions—one year later, in November 2011.  (SMF ¶ 9; Am. Compl. ¶¶ 50, 57.)  During that one-year period, OneLink did not initiate any litigation against or relating to PRTC.  (SMF ¶ 10.)  OneLink did seek to participate in a public hearing on August 8, 2011, to which the TRB expressly invited "interested persons" and "industry representatives." (*In re: Puerto Rico Telephone Company d/b/a Claro TV*, Case No. JRT-2008-CCG-0002, Resolution and Order of July 14, 2011 at 1 (JRTPR) (Exh. R to Grube Decl.).)  There is no allegation or evidence, however, that the TRB's proceedings were delayed by that appearance. (Am. Compl. ¶ 53.)

### E. The TRB Orders Conditional Approval in November 2011, But Chooses Not To Sign the Final Franchise Agreement Until February 2012.

Ultimately, on November 16, 2011, the TRB "issued an order finding it was in the public interest to grant PRTC's application," subject to certain conditions.  (Am. Compl. ¶ 57.)

OneLink and another cable company ("Choice") then filed a new federal suit challenging the TRB's decision and invoking 42 U.S.C. § 1983, which offers a cause of action to those whose statutory or constitutional rights are violated under color of law.  (Am. Compl. ¶ 57.) They requested a temporary restraining order against the TRB's commissioners, but the TRB agreed to postpone its franchise agreement with PRTC until February 2012 in exchange for the plaintiffs' withdrawal of that request.  (Am. Compl. ¶ 58; SMF ¶ 11.)  The parties entered a stipulation to that effect on December 2, 2011, and the TRB and PRTC consequently did not enter a franchise agreement until February 8, 2012.  (SMF ¶ 11.)  Since that date, PRTC has been free to build a video network and offer video services.  (SMF ¶ 12.)

### III.    STANDARD OF REVIEW

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is appropriate where the record demonstrates that there is no "genuine issue" as to any "material fact."  Fed. R. Civ. P. 56(c).  "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possesses the capacity to sway the outcome of the litigation under the applicable law.'"  *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir. 2006).  After the movant shows a "lack of evidence to support the non-moving party's case," the latter must set forth specific facts showing that there is a factual dispute "which could affect the outcome of the case."  *Morales v. Monagas*, 723 F. Supp. 2d 416, 418 (D.P.R. 2010) (Gelpi, J.).  Absent a dispute as to outcome-affecting facts, summary judgment should be granted.  *Celotex*, 477 U.S. at 322.  So, if a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [its] case," other factual disputes are "immaterial" and the defendant is entitled to judgment as a matter of law.  *See id.* at 322-23.

As explained below, OneLink is entitled to summary judgment because the evidence squarely refutes PRTC's basic premise, *i.e.*, that OneLink's litigation caused the TRB to delay approving PRTC's franchise.  The plain chronology proves that it was *governmental* acts that caused any claimed delay; under the law, OneLink cannot be held liable for the consequences of those acts.  Because PRTC cannot hope to establish *causation*, "an element essential to [its] case," all other factual disputes are "immaterial," and OneLink is entitled to judgment now.  *Id.* Specifically, there is no need for the Court or jury to wade through the challenged litigations or assess OneLink's motives (although they were proper) or the conduct of its attorneys and law firms.  PRTC's claims of "sham" litigation, as unfounded as they are, do not matter under Supreme Court precedent in light of the undisputed material issue presented in this motion.

# IV.   ARGUMENT

As this Court previously found, PRTC alleges that it suffered antitrust injury because its entry into the video business was delayed for several years, supposedly protecting OneLink's market share.  *See* MTD Op., 885 F. Supp. 2d at 538.  To hold OneLink liable for this injury, PRTC must prove that OneLink's conduct—namely, its pursuit of litigation ( Am. Compl. ¶¶ 35-58)—*caused* that injury.  *Sullivan v. Nat'l Football League*, 34 F.3d 1091, 1103 (1st Cir. 1994).  PRTC cannot do so.  Rather, it is clear from the undisputed facts that any delay in approving PRTC's franchise stemmed from (i) *PRTC's* own failure to file a meritorious application in February 2008, leading the TRB to deny it; (ii) the *Puerto Rico courts'* decisions to stay TRB proceeding on PRTC's second application, effectively until October 2010; (iii) the *TRB's* timing of its own processing of PRTC's second application from November 2010 until November 2011; and (iv) the *TRB's* voluntary decision to postpone signing a franchise agreement from November 2011 until February 2012.  *None* of these delays is legally attributable to OneLink's litigation.

The most that PRTC can argue is that OneLink *asked* the Puerto Rico courts to stay the TRB proceedings in early 2009 (which they did) and *offered* to withdraw its motion for temporary restraining order in late 2011 if the TRB agreed to a short postponement of the approval of PRTC's franchise agreement (which it did).  But the law is perfectly clear on this point:  A private party can *never* be held liable for the anticompetitive effects of state action— even if the private party asked for the state action and even if that request was a "sham" in the sense that it was undertaken to harm a competitor and without regard to merit.  Accordingly, while OneLink would vigorously dispute the allegation of sham litigation, there is no need for any more discovery or a costly trial into whether OneLink and its (reputable) counsel engaged in "sham" litigation when they raised novel issues in a complex area of law.  Either way, OneLink is entitled to judgment on the undisputed facts because it did not cause PRTC's alleged injury.

**A.** **Parties Are Immune from Liability for Antitrust Injury That Is Caused by State Action, Even if They Made "Sham" Requests for Such Action.**

An antitrust plaintiff must prove causation. *See Sullivan*, 34 F.3d at 1103. After all, the statutes authorizing civil actions for violations for the antitrust laws provide remedies for injuries "*by reason of* anything forbidden in the antitrust laws." 15 U.S.C. § 15(a) (emphasis added). One critical principle of antitrust causation, dispositive here, is that a private party cannot be held liable for the anticompetitive effects of state action, regardless of whether the private party is alleged to have induced or conspired with the state actor and regardless of subjective motives. The action by the government is held to break the causal link between the private party's conduct and the antitrust injury. To be sure, "sham" petitioning may be penalized if it causes *direct market injury*, but no case or doctrine allows liability to be imposed for harm that flows from government action merely because the private party successfully requested that action.

**1.** Immunity for anticompetitive state action originated in *Parker v. Brown*, 317 U.S. 341 (1943). The Supreme Court there held that "nothing in the language of the Sherman Act … suggests that its purpose was to restrain a state or its officers or agents." *Id.* at 350. The antitrust laws prohibit "individual and not state action." *Id.* at 352. *Parker* thus "established that the antitrust laws do not reach restraints of trade imposed by the *state*, rather than private parties." *Interface Grp., Inc. v. Mass. Port Auth.*, 816 F.2d 9, 12-13 (1st Cir. 1987).

*Parker* itself "did not purport to immunize … the private parties who urge [states] to engage in anticompetitive regulation," but the Court recognized that "it is obviously peculiar … to establish a category of lawful state action that citizens are not permitted to urge." *Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 379 (1991). The Supreme Court in *Noerr* therefore "developed a corollary to *Parker*: The federal antitrust laws also do not regulate the conduct of private individuals in seeking anticompetitive action from the government." *Id.* at 379-80.

**2.** *Noerr* immunity actually comprises two distinct principles, which apply to two distinct types of antitrust harm. *First*, the Court in *Noerr* flatly held, citing *Parker*, that "where a restraint upon trade or monopolization is the result of valid governmental action, as opposed to private action, no violation of the Act can be made out." 365 U.S. at 136. That rule, to which *no* exception was mentioned, precluded liability from being imposed on railroads for having successfully influenced governmental action against truckers. *Id.* at 136-42. *Second*, the Court considered the truckers' claim that they "sustained some *direct injury* as an incidental effect of the railroads' campaign to influence governmental action." *Id.* at 143 (emphasis added). This injury did not flow from governmental action that the railroads had induced; rather, the truckers alleged that the railroads' campaign had *directly* "destroy[ed] the goodwill of the truckers among the public generally and among the truckers' customers," inflicting anticompetitive harm apart from the state action. *Id.* at 142. The Court held that this injury was not actionable either—but only because "the railroads were making a genuine effort to influence legislation." *Id.* at 144.

Implicit in this latter holding is an exception for non-genuine petitioning; indeed, *Noerr* expressly admitted a "sham exception" to immunity for the latter sort of injury. It observed that private petitioning "ostensibly directed toward influencing governmental action" may sometimes be "a mere sham to cover what is actually nothing more than an attempt to interfere *directly* with the business relationships of a competitor." *Id.* (emphasis added). Injuries caused *directly* by private petitioning are thus potentially actionable only if the petitioning was a mere "sham." *See id.* By contrast, injuries caused by *state action*—that is, only *indirectly* by petitioning—are always absolutely immune. *Accord Omni*, 499 U.S. at 380-81 (distinguishing, for immunity purposes, between anticompetitive restraints caused "by the governmental action" sought, versus those caused "directly" by "the very process" of seeking the governmental action).

The Supreme Court again explained this distinction in *Allied Tube*. There, the Court pointed out that the scope of *Noerr* immunity depends "on the source, context, and nature of the anticompetitive restraint at issue." 486 U.S. at 499. Specifically, "'[w]here a restraint upon trade or monopolization is the result of valid governmental action, as opposed to private action,' those urging the governmental action enjoy *absolute immunity* from antitrust liability for the anticompetitive restraint." *Id.* (emphasis added). By contrast, where "anticompetitive restraint results directly from private action," immunity still attaches—but only if the harm is incidental "to a *valid* effort to influence governmental action," as opposed to a sham effort. *Id.* (emphasis added). *Allied Tube* thus imposed liability only for harm caused *directly* by the standard-setting association's adoption of a particular standard. Critically, and consistent with *Parker* and *Noerr*, "no damages were imposed for the incorporation of that Code by any government." *Id.* at 500.

In short, neither states nor private parties can be punished for the anticompetitive effects of governmental acts. Private parties can only be punished for the *direct* anticompetitive effects of *seeking* state action, and even then only if they were engaged in "sham" petitioning. The sham exception is thus completely irrelevant where the alleged injury flows from governmental action, because private parties cannot be liable for those injuries under any circumstances.

**3.** Lower courts and commentators have understood this aspect of *Noerr* immunity as arising, at least in part, from causation principles. When the government acts, the private actor's petitioning is not a "proximate cause" of that action because the government made an independent decision to take the action. *Cf. Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 11 (2010) (rejecting RICO liability where injury flowed from independent acts of third parties). And, given the federalism rationale of *Parker*, courts cannot "allow plaintiffs to look behind the actions of state sovereigns" to analyze their reasons for acting. *Omni*, 499 U.S. at 379.

As the leading treatise thus explains, even if "private parties may have influenced or persuaded the government to act," it remains true that "the government's decision to act reflects an independent governmental choice, constituting a supervening 'cause' that breaks the link between a private party's request and the plaintiff's injury." Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law*, § 202c (3d ed. 2006). Accordingly, immunity necessarily attaches "to all petitions for government actions when the antitrust challenge is to *the consequence of the government action itself*." *Id.* This is true whether or not the private parties acted properly or improperly in seeking the government action: "Notwithstanding their illegal conduct, the defendants are not liable for injury resulting from the government's actions." *Id.*

Numerous judicial decisions—including binding precedent from the Court of Appeals for the First Circuit—bear this rule out. For example, in *Sandy River Nursing Care*, the First Circuit affirmed summary judgment for the private-party defendants in an antitrust suit, citing "the well-established *Parker* principle that injury caused by anticompetitive state action is not compensable under the antitrust laws." 985 F.2d at 1141. The court agreed with the district court's analysis that "the actions of the legislature and Superintendent of Insurance superseded defendants' previous conduct, rendering the [allegedly anticompetitive] rate hikes 'an act of government' immune under *Parker* rather than an injury inflicted by defendants' conspiracy." *Id.* at 1144. Notably, the First Circuit rejected the plaintiffs' argument that immunity did not apply because the defendants allegedly acted improperly or used unlawful means to coerce the anticompetitive state action, finding that argument "directly contradicted" by the Supreme Court's *Omni* decision. *Id.* *Accord Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 148 (1st Cir. 2000) (rejecting effort to invoke "sham" exception because "it is apparent that the defendants sought to benefit from the *outcomes* of the processes at issue," *i.e.*, from state actions).

The Ninth Circuit's decision in *Sessions Tank Liners* is to the same effect. There, the court held that there could be no liability where the defendant (Joor) had, through "deliberate misrepresentation," caused a "prominent standard-setting organization to amend its influential model fire code to the disadvantage of Joor's competitor." 17 F.3d at 296. The anticompetitive harm resulted when cities adopted the model code, which blocked the plaintiff from obtaining permits to perform its services. Relying on *Allied Tube*, the Ninth Circuit reversed the district court's judgment for the plaintiff, who had "failed to prove that its injuries result from anything other than governmental action." *Id.* "Because the injuries [plaintiff] complains of are the result of governmental action, Joor is shielded by petitioning immunity from liability under the antitrust laws." *Id.* at 299. In short, nobody may be held liable "for injuries flowing from governmental decision-makers' imposition of an anticompetitive restraint." *Id.* at 300.

The Ninth Circuit made abundantly clear that the "sham" exception was beside the point given the nature of the alleged injury. While the district court had found that "Joor's conduct could not be deemed a valid effort to petition lawmakers," *id.* at 298—*i.e.*, that it was a "sham"—the Ninth Circuit held that to be irrelevant because no "independent marketplace harm" was alleged; rather, the injuries "flowed directly from government action." *Id.* at 299. As such, the "sham" exception was simply inapplicable. "Immunity from liability for restraints imposed by the government attaches regardless of the 'validity' of the efforts of those urging the action," the court explained. *Id.* at 301. Lest there be doubt, the court "re-emphasize[d]" that the only liability that may attach to "'invalid' efforts to petition the government" is "for damages flowing from the non-governmental, independent market-place harm that the defendants' activities caused." *Id.* at 301 n.3.

Other Circuits are in accord. In *Armstrong Surgical Center, Inc. v. Armstrong County Memorial Hospital*, 185 F.3d 154 (3d Cir. 1999), the Third Circuit found that the ordinary exceptions to immunity were inapplicable "to a case where the sole antitrust injury is caused directly by the government action that the private defendant has helped to secure." *Id.* at 159. "[E]ven where the same petitioning conduct might give rise to antitrust liability for injury *directly* caused to a competitor in the marketplace"—that is, in a case of sham petitioning—"if relief is sought solely for injury as to which the state would enjoy immunity under *Parker*, the private petitioner also enjoys immunity." *Id.* Accordingly, the court rejected an antitrust claim because "[e]ach of the injuries the plaintiff claims is a direct result of the Department's decision to deny the plaintiff's application." *Id.* at 160. "In sum, where, as here, all of the plaintiff's alleged injuries result from state action, antitrust liability cannot be imposed on a private party who induced the state action by means of concerted anticompetitive activity." *Id.*; *see also Juster Assocs. v. City of Rutland, Vt.*, 901 F.2d 266, 272 (2d Cir. 1990) (finding immunity because "the claimed restraint of trade is the consequence of the governmental action").

The Seventh Circuit applied the same principles in *Lawline v. American Bar Association*, 956 F.2d 1378 (7th Cir. 1992), which involved an antitrust challenge to disciplinary rules that were developed by the defendant ABA. The court explained that "[t]he disciplinary rules at issue in this case were adopted by the Illinois Supreme Court and by the court below. It is because of their adoption by these two governmental bodies that plaintiffs are supposedly restrained from practicing law." *Id.* at 1383 (citing *Noerr* and *Allied Tube*). Thus, even though the rules had been "prompted" by the defendants, there was no antitrust liability because "[i]t is Illinois' and the Northern District's promulgation and enforcement of the challenged ethics rules and not private parties' interpretation of those rules that restrains competition." *Id.* at 1384.

A final—but particularly apt—illustration of this causation principle can be found in the Sixth Circuit's decision in *Knology, Inc. v. Insight Communications Co.*, 393 F.3d 656 (6th Cir. 2004). In that case, an established franchisee sued a new competitor, which led to a stay of the new franchise until the issue was ultimately resolved—in favor of the competitor—over a year later. *Id.* at 658. The new competitor then sued the original franchisee under the antitrust laws, alleging that it had suffered antitrust injury due to the delay imposed by the stay of the franchise as a result of the baseless litigation. The Sixth Circuit, reversing the district court, found the original franchisee to be immune because "Insight did not stay anything—only the government prevented Knology from moving forward in the face of Insight's suit." *Id.* at 659. In other words, because the harm—the delay—was the result of a stay imposed *by the state*, the party who had filed the suit triggering the stay could not be held liable.

*       *       *

The governing law is thus perfectly clear: If a private party engages in "sham" litigation or "sham" petitioning, *Noerr* permits liability to be imposed for any direct market injury that is caused by the private acts of pursuing the litigation or engaging in the petitioning. But any anticompetitive injury that is caused by government action—even if that government action is induced or triggered by an allegedly "sham" lawsuit or petition—is absolutely out-of-bounds.

### B. PRTC's Alleged Antitrust Injury Is Traceable Only to Immune State Action by the Puerto Rico Courts and the TRB.

In this case, the dispositive question is whether the injury that PRTC alleges—namely, injury flowing from the claimed delay in approval of its franchise applications—was caused *directly* by OneLink's allegedly "sham" litigation, or only as a result of state action. Review of the chronology and the indisputable record facts shows that it is the latter—and that OneLink therefore did not legally cause any harm to PRTC.

**1.** <u>February 2008 – November 2008.</u>  The first relevant interval begins in February 2008, when PRTC filed its first franchise application.  (Am. Compl. ¶ 35.)  The TRB denied that application on the merits in November 2008.  (SMF ¶ 2.)  The TRB made clear, in doing so, that the application failed due to its patent deficiencies.  (SMF ¶¶ 2, 3.)  Because this application was denied, PRTC obviously cannot show that it was harmed by any delay by the TRB in acting on it; a faster denial is still a denial, and so any delay clearly had no anticompetitive effect.  As in *Armstrong*, "[e]ach of the injuries [PRTC] claims" from the delay during this interval "is a direct result of the [TRB's] decision to deny [PRTC's] application."  185 F.3d at 160.

Anyway, OneLink filed *no* litigation relating to PRTC in *any* court during this interval, and PRTC does not allege to the contrary.  (SMF ¶ 4.)  So even assuming that any delay by the TRB caused harm, any such delay cannot be blamed on litigation by OneLink, because there was none.  PRTC does allege respecting this interval that OneLink "appeared at the hearing" set by the TRB in September 2008 and "literally hijacked" it.  (Am. Compl. ¶ 35.)  Even crediting that assertion, the allegation is not (and could not plausibly be) that OneLink's appearance at a single hearing in September 2008—at the TRB's invitation (*In re: Coqui.Net Corp. d/b/a Claro TV*, Case No: JRT-2008-CCG-0001, Resolution and Order of November 12, 2008, at 2 (JRTPR) (Exh. A to Grube Decl.)—delayed any approval of PRTC's application:  The TRB rejected PRTC's patently deficient application on the merits the very next month.  (SMF ¶ 2.)

**2.** <u>December 2008 – October 2010.</u>  PRTC filed its second franchise application on December 11, 2008.  (Am. Compl. ¶ 36; SMF ¶ 5.)  According to PRTC, the regulatory regime contemplates that the TRB will render a decision on such an application within 180 days (Am. Compl. ¶ 29), and the TRB granted PRTC's motion to halve that time (*In re: Puerto Rico Telephone Company d/b/a Claro TV*, Case No. JRT-2008-CCG-0002, Resolution and Order of

January 9, 2009 (JRTPR) (Exh. J to Grube Decl.)). Even before that shortened window expired, however, and prior to the TRB's scheduled hearing on the renewed application, the Puerto Rico Court of Appeals stayed the proceeding, on March 3, 2009. (SMF ¶ 6.) After that stay expired on March 31, the TRB set a new hearing date, but the Puerto Rico Supreme Court extended the stay on May 20, 2009, prior to that rescheduled hearing; and that stay was not lifted by the Supreme Court until October 26, 2010. (SMF ¶ 7.) (During the brief interlude between the expiry of the Court of Appeals' stay and the issuance of the Supreme Court's stay, the TRB was free to act on the PRTC application, but independently chose only to set a new hearing date.)

Thus, while PRTC alleges that OneLink engaged in various "sham" litigations during this second interval (*see* Am. Compl. ¶¶ 37-51), none of that conduct could possibly have *caused* delay of the TRB proceeding, *which was stayed by the Puerto Rico courts*. OneLink's litigation was irrelevant to the pace of the TRB proceeding during this interval, because, while the TRB scheduled hearings during this period, it was barred from holding those hearings or otherwise acting on the PRTC application by orders from the Puerto Rico Court of Appeals and then the Supreme Court. Any delay during this interval was caused by the stays alone, as the TRB itself explained. (*In re: Puerto Rico Telephone Company d/b/a Claro TV*, Case No. JRT-2008-CCG-0002, Resolution and Order of November 16, 2011, at 2 (JRTPR) (Exh. F to Grube Decl.).)

Nor, for reasons explained above, can OneLink be liable for antitrust injury caused by the stays issued by Puerto Rico courts. Those stays are "valid governmental action," and thus have "absolute immunity from antitrust liability." *Allied Tube*, 486 U.S. at 499. As explained by two of the foremost antitrust scholars in their treatise, even if OneLink "influenced or persuaded" the Puerto Rico courts to grant stays, those courts' orders "constitut[e] a supervening 'cause' that breaks the link" between OneLink's actions and PRTC's alleged injury. Areeda & Hovenkamp,

*supra*, § 202c.  Because PRTC's alleged injury is a "consequence of the government action itself," *i.e.*, of the stays, OneLink is absolutely immune for claims based on that injury.  *Id.*

This result is compelled by the First Circuit's decision in *Sandy River Nursing Care*.  As in that case, the "well-established" rule that "injury caused by anticompetitive state action is not compensable under the antitrust laws" necessarily means that "the actions of the [Puerto Rico courts] superseded [OneLink's] previous conduct" and rendered any delay of the TRB process "an act of government" rather than "injury inflicted by [OneLink]."  985 F.2d at 1141, 1144.  Nor can *Sessions Tank Liners* be distinguished; like the plaintiff there, PRTC cannot "prove that its injuries result from anything other than governmental action" and so OneLink "is shielded … from liability."  17 F.3d at 296, 299.  OneLink simply cannot be held liable "for injuries flowing from [the Puerto Rico courts'] imposition of an anticompetitive restraint."  *Id.* at 300; *see also Armstrong*, 185 F.3d at 160 (holding that if "plaintiff's alleged injuries result from state action, antitrust liability cannot be imposed on a private party who induced the state action by means of concerted anticompetitive activity"); *Juster Assocs.*, 901 F.2d at 272 (immunity where alleged injury "is the consequence of the governmental action"); *Lawline*, 956 F.2d at 1383 (no liability where injury caused by action taken "by the Illinois Supreme Court and by the court below," albeit at urging of defendants).  Indeed, the injury alleged here—delay of a franchise application caused by a stay pending litigation—is *identical* to the injury alleged in the Sixth Circuit's *Knology* case.  But, as in that case, OneLink "did not stay anything—only the government prevented [PRTC] from moving forward in the face of [OneLink's] suit."  393 F.3d at 659.

This result is not affected in any way by PRTC's allegation that OneLink's litigation and stay requests were "shams."  Even accepting that allegation, the dispositive fact is that it was the *Puerto Rico courts* that issued the stays, and it was the *stays* that prevented the TRB from acting

during this interval.  As the Ninth Circuit explained, the sham exception is beside the point when the antitrust injury "flowed directly from government action."  17 F.3d at 299.  "Immunity from liability for restraints imposed by the government attaches regardless of the 'validity' of the efforts of those urging the action."  *Id.* at 301; *see also Sandy River*, 985 F.2d at 1144 (holding it irrelevant that defendant allegedly used unlawful means to induce anticompetitive state action); *Armstrong*, 185 F.3d at 159 (holding that even when sham petitioning occurs, immunity applies if "relief is sought solely for injury as to which the state would enjoy immunity" under *Parker*).

Thus, under clearly established law, OneLink cannot be blamed for the delays of the TRB proceeding through October 2010, when the Puerto Rico courts' stays were lifted, because those stays were governmental action that is absolutely immune from antitrust liability.

**3.**     November 2010 – November 2011.  After the Puerto Rico Supreme Court's stay was lifted on October 26, 2010 (SMF ¶ 7; *see* Am. Compl. ¶ 50), the TRB was free once again to proceed with the PRTC franchise application.  It resumed proceedings on November 24, 2010 (*In re: Puerto Rico Telephone Company d/b/a Claro TV*, Case No. JRT-2008-CCG-0002, Resolution and Order of December 21, 2010 (JRTPR) (Exh. Q to Grube Decl.)), but did not issue a final order granting PRTC's application until nearly a year later—in November 2011 (SMF ¶ 9).  The TRB's scheduling during this period was entirely within its own control.

PRTC's Complaint does not allege *any* litigation (much less sham litigation) by OneLink during this interval.  (*See* Am. Compl. ¶¶ 52-56.)  In fact, OneLink had *no* pending litigation relating to PRTC in *any* court during this time.  (SMF ¶ 8.)  The TRB's pace in acting on the PRTC application was therefore not even arguably caused by OneLink.  All the Complaint alleges about OneLink during this period is that it "appeared at a [TRB] hearing in August 2011" and attempted to participate in it.  (Am. Compl. ¶ 53.)  But there is no allegation that OneLink's

conduct at that one-*day* hearing accounts for the TRB's one-*year* consideration of PRTC's application, or that OneLink's conduct delayed subsequent decisions. Nor could any such allegation plausibly be made. The TRB's summary of its consideration of PRTC's application confirms that its own scheduling decisions, not any litigation, drove the process during this time. (*In re: Puerto Rico Telephone Company d/b/a Claro TV*, Case No. JRT-2008-CCG-0002, Resolution and Order of November 16, 2011, at 2-3 (JRTPR) (Exh. F to Grube Decl.).)

The Complaint also alleges that another cable franchisee, Choice, filed a baseless suit on October 27, 2011. (Am. Compl. ¶ 54.) Choice's suit, however, was filed just days before the TRB acted on the PRTC application, and so that suit obviously cannot be blamed for time it took to grant the PRTC application.

In short, no rational jury could reach any conclusion about this time interval other than that the TRB was simply taking its time—which had nothing whatsoever to do with OneLink or any of its allegedly "sham" lawsuits, since none was even pending during this time.

**4.** <u>November 16, 2011 – February 8, 2012</u>. Although the TRB ruled in November that PRTC's application should be granted, it did not sign the required franchise agreement until February 8, 2012. (*See In re: Puerto Rico Telephone Company, Inc., (Claro TV)*, Case No: FC-100, Resolution and Order of February 8, 2012 (JRTPR) (Exh. H to Grube Decl.).)

That lag of approximately two-and-a-half months resulted from an agreement that the TRB voluntarily entered with OneLink and Choice, under which the PRTC franchise would not be granted until February 2012. (SMF ¶ 11; Am. Compl. ¶ 58.) In exchange, OneLink and Choice withdrew a request for preliminary injunctive relief in a suit that they filed in federal court against the TRB in late November 2011. (SMF ¶ 11; Am. Compl. ¶ 58.)

For the same reasons explained above in connection with the stays issued by the Puerto Rico courts, OneLink cannot be held liable for any delay stemming from conscious, voluntary action taken by the TRB regarding the timing of the approval of the PRTC franchise. *See supra*, Part III.B.2. The TRB's decision to postpone the franchise approval until February 2012 is itself plainly immune from liability under *Parker*, as it constitutes valid governmental action. In light of the authority discussed above, OneLink cannot be held liable for inducing or encouraging that valid governmental action. Notably, there is no "conspiracy" exception to the *Noerr* antitrust immunity, *see Omni*, 499 U.S. at 378, and so it is irrelevant that the TRB reached its agreement to postpone approval as part of a settlement discussion with OneLink.

**5.** <u>February 2012 – present.</u> Since February 2012, PRTC has had a valid franchise granting it authority to participate in the video business. (SMF ¶ 12.) Thus, nothing subsequent to that point is relevant to PRTC's claim (and PRTC's Complaint does not allege any allegedly sham litigation thereafter, anyway).

*       *       *

As this review of the undisputed chronology shows, OneLink's litigation—whether sham or genuine—was not the cause of any delayed entry by PRTC into the video business. PRTC did not submit a franchise application acceptable to the TRB until the end of 2008, and it was the Puerto Rico courts that did not allow the TRB to move forward with that application until late 2010. The TRB then took a full year to act on the application, but OneLink did not have any litigation pending during that time. And, although the TRB waited an additional two months before the franchise was officially and finally granted, that was a conscious and deliberate choice made by the TRB itself. As a matter of law, none of this delay can be blamed on OneLink. And without delay legally caused by OneLink, PRTC's antitrust claims cannot survive.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, summary judgment should be granted in favor of OneLink.

OneLink respectfully requests oral argument on this motion.


Dated:  October 11, 2013


OF COUNSEL:

Thomas Demitrack
Tracy K. Stratford
Brian K. Grube
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Telephone:  (216) 586-3939
Fax:  (216) 579-0212

Michael R. Shumaker
Kathryn M. Fenton
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Fax:  (202) 626-1700

/s/  Orlando Fernandez
Orlando Fernandez/USDC-PR 126912
ORLANDO FERNANDEZ LAW OFFICES
Capital Center Building, South Tower
Arterial Hostos, PH-1 Suite 1204
San Juan, PR  00918-1477
Telephone: (787) 294-5698
Fax: (787) 294-5699

**Counsel for Defendant San Juan Cable LLC
d/b/a OneLink Communications**

# Relevant Chronology



**Feb 6**
PRTC files first application

**Nov 12**
TRB denies first application

**Dec 11**
PRTC files second application

**Nov 16**
TRB approves second application

**Feb 8**
TRB/PRTC sign franchise agreement

2008 — 2009 — 2010 — 2011 — 2012

**Mar 3-31**
period of COA stay

**May 20**
Start of S. Ct. stay

**Oct 26**
End of S. Ct. stay

**Dec 2**
TRB settles § 1983 case

Period of other allegedly sham lawsuits*

Apr 2                    Aug 20

☐ = no impediments to TRB          ▨ = governmental action impedes TRB

*The first federal lawsuit is not included because the Court ruled in OneLink's favor, finding a likelihood of success and granting a preliminary injunction.

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed this document with the Court via CM/ECF, which will send electronic notification of the filing to all attorneys of record.

s/ Orlando Fernández

Orlando Fernández, Esq.
USDC-PR 126912
Orlando Fernández Law Offices
Capital Center Bldg., South Tower
Arterial Hostos Ave., PH-1 Suite 1204
San Juan, P.R.  00918-1477
Tel. 787-294-5698 / Fax 294-5699
ofernandez@oflawoffice.com